# Richmond.

## L. J. Upton and Company, Incorporated, v. Atlantic Coast Line Railroad Company.

### February 25, 1926.

### Absent, Christian, J.

1. APPEAL AND ERROR—*Conflicting Evidence.*—The verdict of the jury on conflicting evidence must be accepted on appeal.

2. CARRIERS—*Action for Delay in Transportation—Delay Due to Neglect in Delivering Telegram—Case at Bar.*—The instant case was an action against a carrier arising out of delay in delivering potatoes for the market. It appeared from the evidence that the delay as to one car of potatoes arose from the fact that a diversion order was not promptly received by the carrier. After the diversion order was received the car of potatoes was sent foward with all reasonable dispatch. Either the telegraph company or the railroad company was negligent.

   *Held:* That in the absence of evidence negligence could not be presumed as to either of these companies and that it was the duty of the plaintiff to produce evidence to show that the negligence was that of the carrier.

3. CONNECTING CARRIERS—*Carmack Amendment—Liability of Initial Carrier for Delay in Transportation.*—The Carmack Amendment of June 29, 1906 (U. S. Comp. St. sections 8604a, 8604aa), extends to failures to transport with reasonable dispatch and under it there can be a recovery from the initial carrier for loss, damage, or injury for such failure although on the line of the connecting carrier.

4. CARRIERS—*Action for Delay in Transportation—Burden of Proof.*—In an action against an initial carrier for delay in transportation the burden is upon the plaintiff to show the right to recover. That is, to show that the carrier failed to deliver the goods within a reasonable time. When the plaintiff has shown this he is entitled to recover unless the delay is satisfactorily explained.

5. CARRIERS—*Delay in Transportation—Unusual Press of Business.*—One adequate excuse for delay is unusual press of business.

6. CARRIERS—*Delay in Transportation—Unusual Press of Business—Equipment.*—The rule supported by the weight of authority is that if the carrier has a reasonable equipment for all ordinary purposes, and

the delay is occasioned by an unusual press of business, but the carrying is done with reasonable expedition under the circumstances, then the carrier is not responsible for the delay.

7. CARRIERS—*Delay in Transportation—Unusual Press of Business.*—To require carriers to be prepared at all times to handle with promptness an extraordinary amount of business would be to place upon them an intolerable burden. It would necessitate extraordinary facilities in part unnecessary under normal conditions and for which the public would ultimately have to pay. All that is required is that they shall be reasonably equipped to handle with fair dispatch business normally to be expected.

8. CARRIERS—*Delay in Transportation—Unreasonable Delay—Burden of Proof—Case at Bar.*—In the instant case, an action against a carrier for unreasonable delay in the delivery of potatoes, the cars of potatoes arrived at the Jersey City terminals at 11:55 a. m. on Sunday and were delivered at their destination, a pier of the carrier in New York, at 2:45 p. m. on Monday.

    *Held:* That the burden was on the plaintiff to show that the cars should have arrived at the pier earlier than 2:45 P. M. on Monday; or rather, that the arrival at 2:45 P. M. Monday was evidence of such unreasonable delay as to raise a *prima facie* presumption of negligence and to place upon the defendant the burden of accounting therefor.

9. APPEAL AND ERROR—*Verdict Set Aside by Trial Judge and Final Judgment Entered—Burden Upon Plaintiff in Error to Show Error.*—Upon appeal from the action of the trial court in setting aside a verdict and entering final judgment it is encumbent upon the plaintiff in error to show error on the part of the trial judge in setting aside the verdict and entering judgment on the evidence.

10. APPEAL AND ERROR—*Verdict Disapproved by the Trial Judge—Weight on Appeal.*—A verdict which has been disapproved by the trial judge is not entitled to the same weight on appeal as one that has been approved by him.

11. NEW TRIAL—*Trial Judge Setting Aside Verdict.*—The fact that there is some evidence to support the verdict is not in itself sufficient to demand confirmation at the hands of the trial judge. He can and should act when the verdict is against the clear weight of evidence.

12. CARRIERS—*Action for Delay in Transportation of Potatoes—Case at Bar.*—In the instant case, an action against an initial carrier for delay in delivery of potatoes shipped from South Carolina to New York, the cars of potatoes arrived at the Jersey City terminals of the carrier 11:55 a. m. on Sunday and at the pier of the carrier in New York at 2:45 p. m. on Monday. It was conceded that the transportation to Jersey City was accomplished in proper time, but it was claimed that there was unreasonable delay between the Jersey City terminals and the New York pier of the carrier. It

appeared from the evidence that at the time the cars arrived there was unprecedented and unanticipated congestion of perishable products at the New York piers of the carrier, and that the carrier made extraordinary efforts to handle this business, clearing an extra dock for the purpose.

*Held:* That the railroad acted with reasonable dispatch and there could be no recovery.

13. Judicial Notice—*Pennsylvania Railroad—Action for Delay in Delivery of Goods—Case at Bar.*—It is a matter of common knowledge that the Pennsylvania Railroad is one of the major transportation systems in the country. In the instant case, an action for delay in delivery of potatoes at New York, it could not be expected that the railroad should abandon all its operations and clear out every pier to handle an unusual influx of potatoes, which is, after all, not a particularly perishable commodity.

14. Appeal and Error—*Final Judgment by the Appellate Court—Case at Bar.*—In the instant case, an action for delay in delivery of several carloads of potatoes, there was a verdict for plaintiff which was set aside by the trial court and final judgment entered for the defendant. For the delay of one of the carloads of potatoes defendant was liable. The Supreme Court of Appeals therefore, by virtue of the authority given in section 6365 of the Code of 1919, rendered final judgment against the defendant for the damages sustained from the delay of this car.

Error to a judgment of the Hustings Court of the city of Petersburg, in an action for trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*James E. Heath,* for the plaintiff in error.

*Mann & Townsend,* for the defendant in error.

Holt, J., delivered the opinion of the court.

This is an action against an initial carrier, the Atlantic Coast Line Railroad Company, because of delay in transportation of ten cars of potatoes from

Meggetts and St. Andrews, in South Carolina, to New York. There was a verdict for the plaintiff which was set aside by the trial court and final judgment entered for the defendant. It is this action of the trial court which comes before us for review. These cars, ten in number, were shipped by the South Carolina Produce Association, nine of them to its own order at Potomac Yards, Virginia, and one to its own order at Petersburg. While in transit they were sold by the shipper to the plaintiff and diverted by it to New York. Nine cars went forward on May 19, 1922. Eight of them reached the Jersey City terminal of the Pennsylvania Railroad on Sunday, May 22nd, at 11:55 a. m. They were placed upon barges of that road at 1:20 p. m. on the following day and arrived at the New York side of North river at 2:45 p. m. These and the other cars were placed and ready for the market at 4 a. m. on the days following their arrival at the New York dock. It is conceded that as to them the transportation to Jersey City was accomplished in proper time, but it is said that there was an unreasonable delay after that point was reached, and that they were not promptly placed upon the New York City docks of the Pennsylvania road. Atlantic Coast Line car No. 44,081 was billed to Petersburg and by telegram diverted in transit to New York. It reached Dunlop, a shifting station of the Atlantic Coast Line near that city, on the early morning of May 21st, and was there cut out in compliance with the original shipping directions. The chief yardmaster's evidence is:

"Q. From your records tell us about car Atlantic Coast Line 44,081.

"A. That was set off at Dunlop by extra 1503 at 5:37 a. m. on the morning of the 21st, with twenty-two cars."

The order diverting it to New York was not received at Dunlop until 8:00 a. m. In consequence thereof, it was held over until 2:30 p. m. and then sent forward. It reached Jersey City at 11:35 p. m. on the 23rd; was put aboard barge at 12:45 p. m. on the 24th and reached the New York dock at 3:30 p. m. on the same day.

[1, 2] Atlantic Coast Line car No. 29,784 did not move forward with the other cars on the 19th, but was held over until the 20th. It reached Jersey City at 11:35 p. m. on the 23rd; was put on barge at 10:10 a. m. on the day following and reached the New York dock at 3:30 p. m. The railroad agent at Meggetts said that this was done because this car was not loaded to capacity. D. Q. Towles was the original owner of the potatoes shipped in it. His positive evidence is to the effect that it was. This flat conflict the jury has settled and its judgment must be accepted here. We are also of the opinion that such delay as occurred at Petersburg in the forwarding of car No. 44,081 was not chargeable against the defendant, but was due entirely to the fact that the diversion order was received after the car had actually been cut out. Afterwards it was sent forward with all reasonable dispatch. There was, undoubtedly, some delay at Petersburg of this message. It was received at 9:42 p. m. but it was a Western Union wire and the record does not show when or to whom it was delivered. Either the telegraph company was negligent or the railroad company was. In the absence of evidence negligence cannot be presumed as to either of these companies. Whatever this evidence may have been it was at hand and it was the plaintiff's duty to produce it.

This brings us to the situation at Jersey City and New York. The docks at New York are owned by

the city and leased to public service corporations. The Pennsylvania railroad is the lessee of three docks on North river numbered 29, 28 and 27. Under ordinary conditions pier 29 is set apart for perishable products. Pier 28 is used when this business is particularly heavy and pier 27 has been used also for that purpose under extraordinary conditions.

There was, undoubtedly, some delay in the transfer of this freight. As an excuse for this defendant offers proof of an unanticipated and extraordinary congestion at that time and place.

During the week preceding that of the 23rd the number of cars of potatoes which reached New York over that road was as follows:

```
"Monday, May 16................................34 cars
"Tuesday, May 17...............................33 cars
"Wednesday, May 18............................32 cars
"Thursday, May 19.............................22 cars
"Friday, May 20...............................25 cars
"Saturday, May 21.............................15 cars
                                              _____
                                   "161 cars."
```

For the market day of Monday, the 23rd, 171 cars of potatoes arrived—ten more than had been received during the whole of the previous week.

The evidence also shows a like unexpected increase in arrival of all perishables at that point as will appear from the following statement:

```
"Arrivals Wednesday, May 18th........167 cars
"Arrivals Thursday, May 19th.........166 cars
"Arrivals Friday, May 20th...........161 cars
"Arrivals Saturday, May 21st......... 93 cars
"Arrivals Monday, May 23rd...........440 cars."
```

There was nothing to put the road on notice as to this unlooked for congestion.

At that time there were on pier 29, 8,847 packages of perishables left over from Saturday's business, and to make the situation worse, fifty-six cars of peaches came in, which, because of their perishable nature, had to be given preferential handling. Pier 28 was taken up by dairy products and general merchandise. In this situation the road utilized the facilities of pier 29 on Monday and unloaded 177 cars. It also cleared out pier 28 and on Tuesday unloaded 263 cars and on Wednesday 233 cars. It is to be remembered that Tuesday was a record day for the entire year. On no other one day were so many cars of perishables unloaded.

[3, 4, 5] The Carmack amendment of June 29, 1906 (U. S. Comp. St. sections 8604a, 8604aa), extends to failures to transport with reasonable dispatch and under it there can be a recovery from the initial carrier for loss, damage, or injury for such failure although on the line of the connecting carrier. (*N. Y. P. & N. R. Co.* v. *Peninsular Exchange*, 240 U. S. 34, 60 L. ·Ed. 511, 36 S. Ct. 230, L. R. A. 1917a, 193.) And so the defendant must answer for any negligence of the Pennsylvania railroad. Here, as in all cases, the burden is upon the plaintiff to show the right to recover. That is, to show that the carrier failed to deliver the goods within a reasonable time. When it has done this, and not before, it is entitled to a judgment, unless the delay is satisfactorily explained. *Railroad Company* v. *Chandler*, 129 Va. 695, 106 S. E. 684; 10 C. J. 301. One adequate excuse for delay is unusual press of business.

[6] "The rule supported by the weight of authority is that if the carrier has a reasonable equipment for

all ordinary purposes, and the delay is occasioned by an unusual press of business, but the carrying is done with reasonable expedition under the circumstances, then it is not responsible for the delay." 10 C. J. 292.

[7] To require carriers to be prepared at all times to handle with promptness an extraordinary amount of business would be to place upon them an intolerable burden. It would necessitate extraordinary facilities in part unnecessary under normal conditions and for which the public would ultimately have to pay. All that is required is that they shall be reasonably equipped to handle with fair dispatch business normally to be expected. In *Empire Transp. Co.* v. *Philadelphia & R. Coal, etc., Co.,* 77 Fed. 919, 23 C. C. A. 564, 35 L. R. A. 623, it was said:

"Our reason teaches that the time that is reasonable under ordinary circumstances—that is customary time —is always unreasonable under extraordinary circumstances.

"If the extraordinary circumstances can never be considered, then the charterer must always unload vessels that arrive under unusual circumstances in an unreasonable time. If there was authority for such a proposition, we should hesitate long before adopting it. We think there is none."

[8] It may be said in passing that the bills of lading expressly provided that there was to be no undertaking to transport for any particular market and, indeed, had there been any such provision, it would have been unlawful. *Eastern Shore Produce Exchange* v. *N. Y. P. & N. R. R. Co.,* 141 Va. 611, 126 S. E. 674; *C. & O. Ry. Co.* v. *Ruckman,* 115 Va. 493, 80 S. E. 496; *Chicago & Alton R. Co.* v. *Kirby,* 222 U. S. 155, 56 L. Ed. 1033, 32 S. Ct. 648, Ann. Cas. 1914a, 501, and thus we are brought back to the test of reasonableness.

The burden is on the plaintiff to show that cars which arrived at the Jersey City terminal at 11:55 a. m. on Sunday should have arrived at the North river pier earlier than 2:45 p. m. on Monday; or rather, that their arrival at 2:45 p. m. was evidence of such unreasonable delay as to raise a *prima facie* presumption of negligence and to place upon the defendant the burden of accounting therefor.

If this delay was unreasonable then the adequacy of the defendant's explanation must be determined.

The trial judge may have been of opinion that this freight was forwarded to destination with what would have been reasonable expedition under normal conditions; that there was in no aspect of the case any unreasonable delay, and he may have thought that though there was such delay yet that it was excused by reason of the conditions that then obtained. For reasons which appeared to him sufficient he set aside the verdict of the plaintiff and under section 6251 of the Code entered final judgment for the defendant.

[9] If this was error the plaintiff must show it.

"It is incumbent upon the plaintiff in error here to show error on the part of the trial judge in setting aside the verdict and entering judgment on the evidence." *Kendricks* v. *City of Norfolk,* 139 Va. 702, 719, 124 S. E. 210, 215.

Judge Burks, in *Ricketts* v. *J. G. McCrory Co.,* 138 Va. 548, 121 S. E. 916, said:

[10] "A verdict which has been disapproved by the trial judge is not entitled to the same weight on appeal as one that has been approved by him. *DuPont* v. *Taylor,* 124 Va. 766, 98 S. E. 866. The very fact that he is given the power to set aside a verdict as contrary to the evidence necessarily means that he must, to some extent at least, pass upon the weight

of the evidence. 'It would, indeed, be a futile and idle thing for the law to give a court a supervisory authority over the proceedings and the manner of conducting a cause before the jury, and the right to set aside the verdict of the jury therein because contrary to the evidence, unless the judge vested with such power could consider, to some extent at least, the evidence in the cause;' * * *." *Cardwell* v. *Norfolk & Western Ry. Co.*, 114 Va. 500, 506, 77 S. E. 612, 614.

"But this does not mean that he can set aside a verdict merely because if on the jury he would have found a different verdict. He must be satisfied from the evidence adduced either that there was no evidence to support the verdict, or that the verdict was plainly contrary to the evidence. This conclusion must be drawn from the whole evidence in the case, but in arriving at his conclusions he has somewhat more latitude than this court would have in passing upon a verdict that was sanctioned by the judgment of the trial court."

[11] The fact that there is some evidence to support the verdict is not in itself sufficient to demand confirmation at the hands of the trial judge. If that was all that was necessary we would come back to a demurrer to evidence and the power given would be no power at all. He can and should act when the verdict is against the clear weight of evidence. Such a rule tends to fair judgment. Appellate courts from their angle of detachment gain in perspective, but lose something in local color and much "that floats in the larger meaning of the voice."

[12] In this case Mr. Upton, who lives in Norfolk, stated that he was familiar with the terminal facilities of the Pennsylvania railroad in New York and that

it can handle from 250 to 300 cars a day on pier 29 and a like number on piers 28 and 27. Mr. Pine, chief clerk for the freight agent on piers 28 and 29, said that some time ago such an impression was abroad, but that it was no longer possible because of the fact that the capacity of freight cars had steadily increased. On the 23rd, pier 28 was filled with freight, some of it, butter and eggs, was probably as perishable as potatoes. It is highly improbable that the railroad would have gone to the trouble of clearing out that pier if pier 29 afforded adequate facilities. And yet, there is no question but that this was done. At the risk of reiteration we sum up the situation. One hundred seventy-seven cars were unloaded on Monday, and because of the additional facilities afforded by the clearing away of pier 28, 263 cars were unloaded on Tuesday. The receipt of potatoes for Monday's market exceeded by ten cars the entire receipts for the preceding week, and the receipt of perishables for that day was 440 cars, in turn, almost twice as much as the receipt for the four preceding work days. Moreover there were on hand and entitled to preferential treatment fifty-six cars of peaches and nearly 9,000 packages of freight left over and uncalled for from Saturday's business. This taken in connection with the fact that more cars were unloaded on Tuesday than on any other day of that entire year makes it manifest that the railroad was confronted with unusual conditions, and there is no conflict about the further fact that it had no intimation in advance that it would be called upon to deal with such a situation. A witness, Mr. Raughley, has stated that during the rush season for perishable commodities normally three hundred cars could be handled, but it is certain that this was not the case in 1922, for in that year the

maximum business fell short of such a sum by fifty-seven cars. The mere physical capacity of a pier to hold a given number of cars is not the sole criterion. River transportation, terminal congestion, want of fore-knowledge, the character of the freight are all matters to be remembered. The dock was at once a terminal and a market place.

We are of opinion that the railroad acted with reasonable dispatch.

[13] The concluding argument upon this point and the one stressed at the hearing was that there is nothing to show any attempt was made to use pier 27 at all and that had this been done there would have been no delay. It is a matter of common knowledge that the Pennsylvania railroad is one of the major transportation systems in the country. Some provision in the nature of things had to be made for its business other than that in judgment and it could not have been expected that it should abandon all its operations and clear out every pier to handle this unusual influx of potatoes, which, after all, is not a particularly perishable commodity. It went to the limit in giving this precedence over butter and eggs, actually unloaded, no longer under refrigeration and certainly equally perishable. Indeed, looking at the substance of things, the damage suffered is due rather to the fact that a particular market was missed than to the physical deterioration of a perishable commodity occasioned by delay, although it is of course true that when the delay is unreasonable the defendant must pay. whether the commodity be perishable or not.

All that has been said about arrivals for Tuesday's market applies *mutatis mutandis* to car No. 44,081, which reached Wednesday's market.

[14] Car No. 29,784 was unreasonably delayed at

the point of shipment, Meggetts, and should have arrived at Jersey City on Sunday. For this delay the defendant must pay. It is not possible from the evidence to tell with exactness the loss suffered. In it were 218 barrels of potatoes. If we use the market's reports as a basis of calculation the loss was probably $1.00 a barrel. By virtue of authority given in section 6365 of the Code, final judgment here will be entered for the plaintiff in the sum of $218.00.

*Reversed.*