EMMA A. NUTTER, *Adm'x., etc.,* v. CITY OF SALEM

(No. 6810)

Submitted February 17, 1931. Decided February 24, 1931.

(Rehearing denied April 3, 1931).

*John B. Wyatt,* for plaintiff in error.
*Steptoe & Johnson, Stanley C. Morris* and *Chesney M. Carney,* for defendant in error.

LIVELY, JUDGE:

Plaintiff below was awarded a verdict of $7,500.00, which was set aside and a new trial awarded. From the order awarding a new trial, plaintiff prosecutes error.

Defendant is a municipal corporation and operates a water works system which serves consumers in the city. Plaintiff's decedent was an employee of defendant, and on January 3, 1926, was engaged temporarily as pumper at Valley Street Water Pump Station, the regular pumper having been relieved temporarily in order that he might attend the funeral of a relative. William I. Nutter, the decedent, went to the pumping station about 11:30 A. M., January 3rd, and about two hours thereafter was found in the station room sitting in a rocking chair in an unconscious condition by witness Bieterman who, not being able to arouse him, procured the attendance of Dr. Davis, informing him that there was a man in the station who was "gassed". He (Nutter) had a dark red color in his face. Upon an examination of his pulse and heart action an injection of digitaline was administered, and he was removed to his home and recovered consciousness about six o'clock A. M. the next day. From his hurried examination the doctor expressed the opinion at the time that he was suffering from carbon monoxide. A few days later, Nutter returned to his regular work on the city streets, and worked through the winter months as the weather permitted. In May, he earned $76.35 at $3.35 per day, for June $81.30 at the same wage. About July 1st, he became ill and three or four days later went to bed and died July 24, 1926, from encephalitis, defined to be inflammation of the brain. He was attended in his last illness by Dr. Davis, in consultation with Drs. Strother and Sloan.

The negligence charged is based on failure of the city to provide a safe place to work and to instruct its servants of the dangers attending the work done by them. It is charged that the pump house contained an internal combustion engine fired by a hot tube equipment and propelled by ignition of natural gas, and that it was defendant's duty to keep the engine and hot tube in reasonably safe condition and repair,

but that defendant breached this duty by permitting its equipment to become out of repair, and emit great quantities of noxious gases into the room, insufficiently ventilated, not only from the engine and tube but from a heating stove which burned natural gas, which noxious gases were inhaled by Nutter, causing his death. There was no evidence that either the engine, tube or stove was out of repair or defective. There was evidence that the engine had been in use every day for 23 years without reboring the cylinder, or the piston rings being changed, and that it may have been, for this reason, highly productive of carbon monoxide. The trial court thought that the doctrine of *res ipsa loquitur* applied, and the jury might infer, in the absence of explanation on the part of defendant of the cause of Nutter's condition, that he was overcome on January 3rd by the presence of carbon monoxide, and in view that Dr. Davis was then of the opinion that Nutter was suffering from carbon monoxide. Some time after the alleged inhalation of the monoxide, a scientific test was made to see if the machinery actually generated and released in the room carbon monoxide, and none was found. The test to ascertain such gas is said to be so efficient that it will register the presence of such gas if there is the minutest quantity in the air. The normal operation of the machinery did not produce carbon monoxide, and it is not shown that the operation of the machinery at the time of the alleged injury was beyond the normal. It might be possible that Nutter had operated the pump in some manner which produced the gas, but of course that would be conjecture. We doubt if the doctrine of *res ipsa loquitur* would be applicable, for, at the time, the decedent was in charge of and operating the machinery. *Peters* v. *Lynchburg Light, etc.,* 108 Va. 333. However, granting that the circumstances shown, considered with the evidence of Dr. Davis who, from his casual diagnosis, pronounced the deceased as suffering from monoxide gas, would convict defendant of negligence, a question we do not now decide, (for the action of the court in directing a new trial must be affirmed for other reasons), the evidence is very unsatisfactory as to the relation between the alleged sickness from monoxide, and the death occuring

over six months later. Five doctors were examined, and none of them traced the cause of his death to monoxide poisoning. They testified that there were many causes for encephalitis, the malady which caused the death, among which were hardening of the arteries, and Brights disease; and there was evidence that decedent had both of these maladies. Dr. Davis, who attended deceased both in January and in his last illness in July, and who had observed him on the streets in the interim, and a witness for plaintiff, was asked the cause of Nutter's death and answered that it was encephalitis. Asked to state what gave rise to that encephalitis, he replied: ''Well, I don't know that I can state. There is different things that might have caused it.'' On the other hand, there was evidence from members of the family and other non-medical witnesses which would tend to show that the encephalitis was superinduced by the illness contracted in the preceding January. The trial court held that the evidence of the cause of the death from the alleged monoxide poisoning did not preponderate in favor of plaintiff. From an inspection of the entire record we cannot say that the trial court was clearly wrong in so holding. The question before us is whether the trial court abused its discretion in directing a new trial. The rule or principle which governs this Court in passing upon the judgment of the trial court in awarding a new trial has been very well settled by numerous decisions. That able jurist, ALPHEUS F. HAYMOND, in *Miller* v. *Insurance Co.*, 12 W. Va. 117, reviewed decisions and texts and came to the conclusion, concurred in by the other members of that able court, that the trial court may grant a new trial where the evidence is contradictory and the verdict is against the weight of evidence, but always to be exercised with caution; but when so exercised the trial court's opinion is entitled to peculiar respect, and generally the appellate court will not reverse.

Judge Roan, in *Bennett* v. *Hardaway*, 6 Mun. (Va.) 129, pointed out in *Miller* v. *Insurance Co.*, *supra*, held that the trial court was in much better situation in determining that the ends of justice would be served by a new trial than the appellate court, because the trial court saw the demeanor of

the witnesses and their manner of giving evidence, and whether partial or fair; saying that, "It is an important principle that the revising court should have the same lights, and act upon the same data, as the inferior court." The same thought was expressed in *Pallotto* v. *Paper Company,* 106 W. Va. 60, 65; and *Levine Brothers* v. *Mantell,* 90 W. Va. 166, 173. The rule and its reason is clearly stated by Judge Litz in *Haggar* v. *Transport Co.,* 106 W. Va. 522, as follows: "It is settled law that a verdict of a jury upon conflicting evidence should not be disturbed unless manifestly wrong and against the weight of evidence; but it is equally well settled that 'the judgment of the trial court on a verdict is entitled to peculiar weight, and that this is especially true where the order of the court sets aside and does not approve the verdict'." Many other of our cases of like import could be cited. Suffice it to say that we cannot disturb the trial court's order on the theory that plaintiff's cause of death preponderates that of defendant.

The order awarding a new trial is affirmed.

*Affirmed.*