M. W. RUCKER *et al. v.* FIRE ASSOCIATION OF
PHILADELPHIA

(No. 8672)

Submitted February 15, 1938.   Decided April 5, 1938.

*Strother & McDonald,* for plaintiffs in error.
*Robinson & Stump* and *James W. Wilson, Jr.,* for
defendant in error.

FOX, JUDGE:

M. W. Rucker, J. E. Rucker, the Community Savings
and Loan Company and Clarksburg Reo Company com-

plain of a judgment of the Circuit Court of Harrison County setting aside the verdict of a jury returned in their favor on a policy of insurance issued by the Fire Association of Philadelphia. The policy of insurance, covering fire, theft and many other perils, was issued to M. W. Rucker and J. E. Rucker on an automobile truck purchased by one of the insured from the Clarksburg Reo Company, for which notes were executed, and later transferred to the Community Savings and Loan Company. The action is one in assumpsit, and is based on the alleged theft of the truck.

The declaration filed is in statutory form, and the policy is exhibited therewith. The defendant filed specifications of defense by which it challenges the right of recovery upon the following grounds: (1) that the truck was not kept in a private garage as warranted by the insured; (2) that the provisions of the policy with respect to preserving the property after it was recovered following the theft, were not complied with; (3) that immediate notice of the loss was not given the defendant; (4) that the suit was instituted before the expiration of sixty days from the date when proof of loss was made, and that the action was, under the terms of the policy, prematurely instituted; and (5) that there was misrepresentation and fraud in that the date of the alleged loss, and the value of the truck, as of that date, was misrepresented. The plaintiffs, in an original and amended reply, specifically denied items one, two, three and five of defendant's specifications of defense, and as to item four thereof, covering the institution of the action before the expiration of sixty days from the filing of the verified proof of loss, plaintiffs alleged the waiver of said provision in that, after notice of loss was given to the defendant, it denied liability on the policy therefor. The case was tried on the pleadings thus filed. After the plaintiffs had completed their testimony, a motion was made by the defendant that a verdict be directed in its favor, on the grounds set up in its specifications of defense, and on the further ground that the evidence of

the plaintiffs disclosed that, at the time of the loss complained of, the automobile was being used in violation of the limitation of use clause contained in the policy, providing:

"Unless otherwise provided by agreement in writing added hereto, and additional premium paid therefor, this Company shall not be liable for loss or damage * * * where the automobile described herein is being used as a public livery conveyance for carrying passengers for compensation; or where rented under contract or lease."

This clause was not set up in the specifications of defense filed by the defendant, and the plaintiffs objected to its consideration for that reason. Upon the consideration of the entire motion, the court overruled the same; whereupon, the defendant introduced its testimony, the case was submitted to the jury upon instructions, and a verdict for the plaintiffs returned.

The defendant then moved to set aside the verdict, and the trial court, after further consideration, sustained the motion on three grounds: (1) that the plaintiffs' evidence having disclosed a violation of the limitation of use clause of the policy, the defendant was not precluded from taking advantage of the defense thereof, notwithstanding its failure to specify such violation in its specifications of defense, and that, on the record, the verdict was not warranted; (2) that the plaintiffs' action was premature in that it was instituted before the expiration of sixty days from the date when verified proof of claim was filed; and that on the question of waiver by the defendant of the clause of the policy covering date of payment of loss, the verdict of the jury was against the plain preponderance of the evidence; and (3) that the evidence did not show that the immediate notice of loss required by the policy had been given.

We think the action was prematurely instituted. The contract between the parties provides:

"This Company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof, by any requirement, act or proceeding on its part relating to the appraisal, or to any examination herein provided for; and the loss shall in no event become payable until sixty (60) days after the notice, ascertainment, estimate and verified proof of loss herein required have been received by this Company; and if appraisal is demanded, then not until sixty (60) days after an award has been made by the appraisers."

No question is raised as to the reasonableness of this provision, and it is treated as an enforceable one in all insurance cases where the waiver of such provision is relied upon for recovery. A similar provision is approved as to fire insurance companies in the statutory form therefor. Code, 33-4-7. We are assuming, therefore, that unless waived, such provision should be upheld. However, a definite denial of liability under the policy, involving a refusal to pay the loss sustained thereunder, has been held to waive this and kindred provisions in a policy, and an action may be maintained even though instituted within the period within which, under the policy, the loss was not payable. *Morris* v. *Dutchess Insurance Company*, 67 W. Va. 368, 68 S. E. 22; *Pauley* v. *Insurance Office*, 79 W. Va. 187, 90 S. E. 552, L. R. A. 1918 E, 473; *Huff* v. *Insurance Company*, 94 W. Va. 663, 119 S. E. 854; *Hetzel* v. *Insurance Company*, 108 W. Va. 22, 150 S. E. 385. In *Crouch* v. *Insurance Company*, 104 W. Va. 605, 140 S. E. 681, it was held that "a waiver of proof of loss is not defeated by a subsequent act of insured in attempting to furnish the same before bringing a suit on the policy", which supports the proposition that the actual filing of verified proof of loss, after there had been a definite denial of liability, would not have prevented the plaintiffs from relying upon such denial of liability to sustain their action within the sixty-day period. The record discloses that the contention of the plaintiffs is that there was denial of liability on .or

about May 5, 1934, and that formal proof of loss was filed on May 16th, and that this action was instituted on June 18th, following.

Thus the question of fact as to whether or not there was, on the part of the company, such denial of liability as amounted to a waiver of the policy provision that the loss was in no event payable until sixty days after proof of loss had been filed is raised. The first question presented is that of the authority of the adjusters to act for the company on that matter. We think that the adjusters were clothed with such authority, and that the letter of May 3, 1934, is conclusive evidence thereof. On May 1, 1934, the attorneys for the insured communicated by letter with the defendant with respect to the loss complained of, and on May 3rd, in reply to that letter, the defendant, acknowledging receipt of the same, stated that the claim therein mentioned had been "referred to the Fire Companies' Adjustment Bureau, Union Bank Building, in your city who are representing us in this connection," and the defendant cannot now be heard to say that the adjustment bureau therein referred to was not authorized to act for it. It is admitted on the record that W. D. Swearingen and C. C. Campbell, parties with whom conversations and communications are claimed to have been had with respect to this loss, were conducting the adjustment bureau referred to in the letter from which we quote.

But what does the record show that the plaintiffs did? Witness Strother states that within two or three days after the receipt of the letter of May 3rd, he went to the adjustment bureau in Clarksburg and presented the claim of loss now asserted to someone in that office. He states that both Swearingen and Campbell were present on that occasion, but does not remember with whom he talked. He first says, referring to the conversation then had, "I cannot say definitely at that time just which one I talked to, but I am reasonably sure that Mr. Swearingen was one of the men that gave me to understand that they would not —", and when warned by the court against stating his understanding, the examination pro-

ceeded and the witness was asked: "Well, was that the extent of your conversation? You went over there and met one or the other of these men and called up the subject and they told you that they would not settle?", to which he answered, "They did." He then stated: "Yes, they advised me they would not settle, and in fact gave me their impression that they thought —". Objection being made to this answer, the witness then said: "They told me they would not settle the loss." When asked if he had had any further conversations with either Swearingen or Campbell, he stated that he didn't recall that he did, but "I know they made it emphatic they would not pay this loss." And later in his examination, said that they, Swearingen and Campbell, advised him that their impression was that the truck was permitted to be stolen or handled carelessly for that purpose on the part of one of the insured, who was not then in the city. On May 16, 1934, some ten or eleven days after Strother claims he visited the adjustment bureau and had the conversation about which he testifies, he wrote a letter, in the name of his firm, directed to the defendant, which, leaving out the headings and signatures, reads as follows:

"In reply to our letter of May 1st, you advise that the above matter has been referred to the Fire Companies' Adjustment Bureau, in the Union National Bank Building, Clarksburg, West Virginia. We took it that the Fire Companies' Adjustment Bureau would get in touch with us, with reference to this matter, but they did not do so, and yesterday we got in touch with their offices and their Mr. Swearingen, who was looking after this matter was out of town.

"This loss was reported to you, or your representative some time ago, but we have had some information to the effect that perhaps a formal proof of loss has not been filed with you. Therefore, we are herewith enclosing a formal proof of loss, properly verified by M. W. and J. E. Rucker, the assureds named in this policy.

"Our clients advise that they do not want it to appear that they are trying to rush this mat-

ter unnecessarily, but that the Community Savings & Loan Company of Clarksburg, who holds the deferred purchase money notes against them, are pressing for an adjustment of this matter on the 23rd of this month. Our clients, therefore, want some disposition, or satisfactory arrangement for disposition of this matter by that time, otherwise, they have directed us to start legal proceedings to recover under the above mentioned policy.

"Please advise us definitely as to your disposition in this matter, in order that we may know what course our clients will be required to take before the 23rd of this month."

In explanation of this letter, the witness testified, in effect, that the writing of the letter and the furnishing of proof of loss was sent as information to the defendant, thinking that, perhaps, by writing a letter, they might reconsider the matter and settle the claim; but reiterates that the adjustment bureau at Clarksburg had told him that liability was denied. He also states that when he requested a blank for proof of loss, he was told the claim was not going to be settled, but his testimony is indefinite as to who made this statement on that occasion.

On the part of the defendant, C. C. Campbell testified that he had no part in the investigation of this claim, and that the only time he saw Strother was the occasion when he advised him that Swearingen was handling it, which, according to Strother's letter of May 16th to the defendant, was on the day before that letter was written. Swearingen denies that he ever saw or talked with Strother about the claim, and when asked if he had any communication with him with respect thereto before the action then being tried was instituted, replied: "Not that I recall." However, on cross-examination, he admits that he may have "twitted" Strother in a street conversation about the truck, but says that the matter was not seriously discussed. The testimony of Campbell and Swearingen, while not entirely satisfactory, amounts to a denial that Srother visited the adjustment bureau or communi-

cated with it prior to the day next preceding the writing of his letter to the defendant on May 16th.

But for the letter of May 16, 1934, we would be inclined to sustain the finding of the jury as to the denial of liability under the policy sued on. Aside from the letter, the evidence is conflicting, and, in such a situation, we are not warranted in setting up our judgment against that of the jury. The fact that the statements of Strother are denied by both Campbell and Swearingen is not alone sufficient to justify a conclusion on our part different from that reached by the jury. But the letter itself is, in our judgment, decisive of the issue raised on that point. Memory is known to be treacherous, and any one of the witnesses who testified, in view of the lapse of time, may have been honestly mistaken as to what occurred; but a letter written within a few days after Strother says he first visited the adjustment bureau and talked with Campbell and Swearingen, or one of them, and on the next day following his last visit to the bureau, must be treated as the most reliable and satisfactory statement of what occurred with relation to the settlement of the claim. With this thought in mind, what do we glean from the letter? (1) There is no mention of the first visit, but only that of the day before when he failed to see Swearingen; (2) no mention of any refusal to pay the claim or any discussion of its payment or any denial of liability; (3) that the writer had expected the bureau to get in touch with him and it had not done so, thus, by inference, refuting the claim that the matter had been discussed between them; (4) that the bureau had not been in touch with them on the matter, a clear contradiction of the claim that there had been a denial of liability; (5) a formal filing of verified proof of loss; (6) a plea for an adjustment of the claim not later than May 23rd, following the date of the letter; and (7) a request that the writer be definitely advised of the disposition of the company on the matter in order that the claimants might know the course they would be required to take. We think this letter fully and completely refutes the contention of the plaintiffs that there was such

a denial of liability under the policy as would release them from the restriction therein against the institution of a suit to recover thereon implied in the provision that the loss should not be due and payable until sixty days after verified proof of loss had been received.

The trial court, in setting aside the verdict held that on the point of the denial of liability, the same was "against the plain preponderance of the evidence." The judgment of a trial court is entitled to peculiar weight where a verdict has been disapproved by it. *Miller* v. *Insurance Co.,* 12 W. Va. 116, 29 Am. Rep. 452; *Reynolds* v. *Tompkins,* 23 W. Va. 229; *Martin* v. *Thayer,* 37 W. Va. 38, 16 S. E. 489; *Adkinson* v. *Baltimore & O. R. Co.,* 75 W. Va. 156, 83 S. E. 291; *Wilson* v. *Ice,* 78 W. Va. 672, 90 S. E. 272; *Shipley* v. *Virginia Ry. Co.,* 87 W. Va. 139, 104 S. E. 297; *Ross* v. *Coal Corporation,* 92 W. Va. 229, 116 S. E. 155; *St. Clair* v. *Jaco,* 95 W. Va. 5 ,120 S. E. 188; *Vaughan* v. *Hospital,* 103 W. Va. 156, 136 S. E. 837; *Haggar* v. *Transport Co.,* 106 W. Va. 522, 146 S. E. 49; *Pallotto* v. *Paper Co.,* 106 W. Va. 60, 144 S. E. 720; *Nutter* v. *Salem,* 110 W. Va. 180, 157 S. E. 592; *Venturino* v. *N. & W. Ry. Co.,* 113 W. Va. 341, 167 S. E. 868. Such disapproval takes something from the weight ordinarily accorded a verdict. *Kendricks* v. *Norfolk,* 139 Va. 702, 124 S. E. 210; *Maurer* v. *Norfolk,* 147 Va. 900, 133 S. E. 484; *Upton & Co.* v. *Atlantic Coast Line R. Co.,* 146 Va. 475, 131 S. E. 827; *Ricketts* v. *J. G. McCrory Co.,* 138 Va. 548, 121 S. E. 916; *Meade* v. *Saunders,* 151 Va. 636, 144 S. E. 711. For these reasons, as well as the weight which we think should be accorded the evidence on the particular point, we affirm the judgment of the circuit court setting aside the verdict of the jury, and remand the case on the ground that the action before us was prematurely instituted.

In view of this disposition of the case, we have not thought it advisable to pass upon the other questions raised, inasmuch as there will likely be a new trial of the questions involved in another action, wherein the pleadings and facts may be materially different than

72

those presented in the record before us. In such new proceeding and trial, the question of pleadings involved herein is not likely to be again presented, and on the question of notice of loss, and whether or not the contract under which the truck was operated at the time it is alleged to have been stolen was rented within the meaning of the policy, are questions, which, in our judgment, should only be decided upon full development of the facts bearing thereon in a new trial.

*Affirmed; remanded.*