## CIRCUIT COURT OF SMYTH COUNTY

William G. Williams

v.

James H. Long et al.

July 20, 1999

Case No. (Chancery) 98-6461

BY JUDGE CHARLES H. SMITH, JR.

I have completed my review of this chancery action which is pending before the court for decision upon the defendants' demurrers and special pleas in bar. This matter was heard before the court by argument on September 21, 1998, and the court took the matter under advisement to allow counsel to submit additional briefs and authorities. I have reviewed the pleadings and exhibits, the memoranda, and authorities and considered all of same in light of counsels' arguments made at the hearing. In consideration of all of which, the court finds as follows.

The plaintiff filed this action on June 1, 1998, seeking to have the court declare him the owner of one-half the stock in the H. S. Williams Company, Inc. The complaint also requested the court to impose a constructive trust upon the stock of the company and to require the specific enforcement of an alleged oral agreement between the plaintiff and his deceased brother, Harry, to give the plaintiff a one-half interest in the company. The defendants have demurred and filed special pleas to the bill of complaint including the plea of judicial estoppel, statute of limitations, defect of parties, and laches.

The factual allegations that give rise to this action and considered at this point in the light most favorable to the plaintiff, at least for purposes of the demurrer, are as follows.

The plaintiff is a brother to the late Harry S. Williams, who departed this life testate on January 15, 1998. Harry Williams was survived by his wife, Patsy. She died testate on February 12, 1998. Harry Sanders Williams was the founder, or as the case may be, the co-founder of the H. S. Williams

Company, Inc. In his will, he devised his stock in the disputed company to his wife, Patsy. Patsy Williams left the stock to four employees of the company provided they pay the estate and inheritance taxes on the bequest. No provision was made for the plaintiff in either will. The plaintiff contends that the H. S. Williams Company, Inc., is the product of a joint venture or partnership agreement entered into between him and Harry in about 1962. The plaintiff contends that there were specific agreements between him and Harry as to how the business would be established, operated, and managed. Indeed, he contends that he had a new pickup truck at the time which was the first asset of the company. He contends that the partnership was to be a 50/50 proposition. It is contended that the business prospered and grew over the years to become one of the largest metal building construction companies in the world. In 1965, Harry, who was allegedly in charge of management, had the company incorporated naming himself, his wife, Patsy, and the plaintiff as officers and directors of the corporation. However, all stock was issued to Harry and Patsy. The plaintiff contends that on numerous occasions, he demanded some indicia of ownership in the company and was always assured by Harry that it would be forthcoming if not in stock then "in some other way." In the 1980s, Harry developed very serious health problems. As his condition worsened, the plaintiff contends he and his brother reached an agreement whereby Harry would make provision in his will for payment of the plaintiff's one-half interest in the company. Of course, no such provision was ever made.

The defendants have filed their demurrers and pleas to the plaintiff's pleadings as stated above. The plaintiff contends the court should decline to rule on these pleas at this time since they are tantamount to motions for summary judgment and no discovery has been taken in the case. The court is of the opinion that this position is without merit particularly as it pertains to the special plea of judicial estoppel. The evidence was submitted on this plea at the hearing and was received without objection. There are no controverted factual issues pertaining to this special plea. Thus, it is properly submitted and ready for decision.

This court is of the opinion to, and will, sustain the plea of judicial estoppel. The court's ruling on this plea is dispositive of the case and obviates the necessity for addressing the other pleas.

The defendants here do not rely upon the plea of equitable estoppel as the plaintiff's arguments and authorities seem to suggest. The defendants, in their well-reasoned memoranda, rely solely upon the doctrine of judicial estoppel. As defendants note, it is a related but distinct doctrine. It is a doctrine designed to protect the integrity of the courts from unscrupulous litigants who

would intentionally assert inconsistent positions in an effort to mislead the court in order to gain some advantage in litigation. It is a rule that preserves the integrity and dignity of the courts by denying litigants the right to "play fast and loose" with the court. It is a sound judicial principle recognized by the Virginia Supreme Court as being essential to the preservation of the integrity of the judicial process. It is most consistently applied in cases where the litigant makes inconsistent factual allegations or assertions under oath.

> If the parties in court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would, in most cases, be paralyzed ... but the rights of all men, honest and dishonest, are in the keeping of the courts and consistency of proceeding is, therefore, required in all those who come or are brought before them ... .
>
> Both the consistency of proceeding and the consistency of testimony is highly essential to the proper administration of justice.

*Burch v. Grace St. Bldg. Corp.*, 168 Va. 329 (1937).

The defendants contend that the case at bar presents a red letter example for application of the rule. This court could not agree more. It is apparent to this court that the plaintiff has made allegations under oath in this case which are diametrically opposed to and inconsistent with testimony given under oath in another case in which he was the plaintiff. Granted, the parties here are different, at least the defendants. However, this court is not persuaded that it should turn a deaf ear on that prior testimony and ignore it simply for lack of mutuality. Courts are not powerless to protect themselves from those who would corrupt and pervert the judicial process. In his divorce case, *William G. Williams v. Sadie V. Williams*, filed in 1976 in the Circuit Court of Smyth County, the plaintiff herein testified under oath as follows:

Q.      Now, in 1962 you started working with your brother in H. S. Williams Company. Is that correct?

A.      That's correct.

Q.      In what capacity did you start in 1962?

A.      Foreman.

Q.      Now, how long were you a foreman with H. S. Williams Company?

A.      Three years.

Q.      And, then what was your position?

A.      I became a superintendent.

Q. And, how long then were you a superintendent?
A. Well, for the rest of the time I am with the company since that time.
Q. Is that your title now?
A. Yes.
Q. Do you hold an official corporate office with H. S. Williams Company?
A. No, I do not.
Q. You are not a Vice President?
A. I am Vice President, but I am not a company officer. I don't have any, own any part of the company.
Q. But you are a Vice President?
A. That's right in charge of erection.
Q. And, you stated that you have no ownership in the company?
A. That's correct.

The plaintiff in his bill of complaint has made allegations under oath that directly contradict that sworn testimony. Notably:

> [I]n or about 1962, Harry approached his brother, William, with the request that they enter into a partnership for the purpose of starting a metal construction business ... . Harry and William entered into a partnership agreement for the founding and ownership of the business ... . Harry and William agreed that they would be equal partners in the business ... . At all relevant times, William had a one-half ownership in the property.

The plaintiff gave his testimony in the prior litigation in an effort to gain an advantage or more favorable ruling from the court. He was represented by counsel and knew that the court's ruling with regard to any spousal support he would have to pay would necessarily require the court to consider "the financial resources of the parties." Section 20-107 of the Code, as in effect in 1977. Likewise, the plaintiff has made his allegations under oath in this case in an effort to obtain a judgment from this court which would substantially increase his wealth. These allegations are with regard to exactly the same subject matter inquired about in the divorce depositions. This court cannot allow a litigant to gain and prosper by this kind of manipulation.

The plaintiff comes into this court of equity seeking equitable relief, but he does so with unclean hands. "He who seeks equity must do equity."

The court will dismiss this cause with prejudice.