## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## RECTOR V. HANCOCK.

### March 18, 1920.

1. LIMITATION OF ACTIONS—*Parol Agreement for Release of Notes— Case at Bar.*—The makers of three notes conveyed certain property in trust to secure the payment of the notes. At the time the loan was made for which the notes were given, a parol agreement was entered into between the payee and the makers of the notes to the effect that the payee would take possession and control of the real estate conveyed by the deed of trust during the term of the loan and manage the same for his benefit, taking all the rents and profits arising therefrom for his own use, and that the makers of the notes would remain on the property in the employment of the payee during the term of the loan and perform services thereon without compensation, except their board and keep, and in consideration therefor the payee agreed that at the maturity of the loan he would fully release the same unto the makers of the notes, and have the property conveyed in trust to secure the loan fully discharged and released from the lien of the deed of trust.

   *Held:* That if the parol agreement was regarded as a transaction separate and distinct from the notes, breach of the agreement by the payee merely entitled the complainants to a right of action which they could assert either by independent proceeding or as a counterclaim or offset against the notes, and as the parol agreement was to be completed in May, 1912, and suit was not brought until June, 1917, the cause of action was barred by the statute of limitations.

2. LIMITATION OF ACTIONS—*Parol Agreement for Release of Notes— Payment of Notes by Services—Case at Bar.*—While the makers of the notes referred to in the preceding syllabus conceded that the agreement for services was by parol, and that any counterclaim thereunder would be barred, they claim the right to rely upon the agreement as a pure defense, against which no limitation would run, taking the position that the agreement had been fully performed by them, and in effect amounted to no more and no less than a payment of the notes secured by a deed of trust.

*Held:* That the infirmity in this position was that there had never been any acceptance of the possession of the land and the services of the complainants as a payment of the notes.

3. BILLS, NOTES AND CHECKS—*Payment—Payable in Money.*—One of the essential attributes of a negotiable note is that it is payable in money.

4. PAROL EVIDENCE—*Parol Evidence to Vary Terms of Written Contract.*—When parties have deliberately put their engagements into writing in such terms as import a legal obligation without any uncertainty as to the objects or extent of such engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking was reduced to writing; and parol evidence is inadmissible to contradict or vary the terms of a valid written instrument.

5. BILLS, NOTES AND CHECKS—*Medium of Payment—Parol Evidence.*—Parol evidence is inadmissible to show that a note or other obligation in terms payable in money was in fact to be discharged in some other way; *e. g.,* by services or the rents and profits of real property.

6. BILLS, NOTES AND CHECKS—*Medium of Payment—Parol Evidence.*—While there is some conflict of authority upon the rule as set forth in the preceding syllabus, it is believed that the conflict is more apparent than real, and due, in·some cases at least, to the failure to distinguish between a contemporaneous parol contract intrinsically connected with the written contract and one which is extrinsic and independent of the writing. The former, if challenged, cannot be availed of for any purpose, while the latter may be the basis of an independent action, or of an offset or counterclaim against a demand upon the written contract.

7. BILLS, NOTES AND CHECKS—*Medium of Payment—Parol Evidence—Accord and Satisfaction.*—An executed or fully performed contemporaneous verbal agreement for the discharge of a note, as distinguished from an executory contract for the same purpose, cannot be shown by parol, and will not constitute a good defense in an action upon the note, except in so far as such contract, when fully performed by the maker of the note and accepted as such by the payee, amounts to an accord and satisfaction. The collateral contract must have been executed in the sense that something else than money has been actually given and received in satisfaction of the debt. When this has been done, the debt has been discharged.

8. BILLS, NOTES AND CHECKS—*Medium of Payment—Parol Evidence—Accord and Satisfaction.*—Until there has been an acceptance and consequent discharge of the written obligation to pay money, it matters not whether the parol contract re-

mains executory or has been fully executed so far as the rule as to parol evidence is concerned, because in either case the purpose is to prove a contract different from that which is evidenced by the writing. Of course, an executed· contract will generally be of much more value to the defendant as a counterclaim or offset against an action on the written obligation than a contract which still remains executory; but neither one can be engrafted by parol upon such obligation so as to vary its terms in regard to matters completely covered by it.

9.  BILLS, NOTES AND CHECKS—*Medium of Payment—Parol Evidence—Accord and Satisfaction—Case at Bar.*—In the instant case, if it had been alleged that, subsequent to the execution of the notes, the payee accepted the possession of the property and the services of the maker in satisfaction of the notes and afterwards refused to release the deed of trust, parol evidence would have been admissible to prove such acceptance, as this would simply be proving by parol an accord and satisfaction equivalent to payment, which is always permissible; and as against such a defense, the statute of limitations would not constitute a bar.

10.  BILLS, NOTES AND CHECKS—*Medium of Payment—Parol Evidence—Accord and Satisfaction—Case at Bar.*—But the allegations of the bill in the instant case did not make a case of accord and satisfaction, because the written and verbal contracts were contemporaneous, whereas an accord implies a pre-existing debt or dispute; and because there was no *in praesenti* acceptance of the verbal arrangement as a substitute for and discharge of the written contract, but only an agreement to accept *in futuro* a performance of the verbal arrangement.

11.  ACCORD AND SATISFACTION—*Acceptance—Agreement to Accept.*— In order to constitute a valid accord and satisfaction, whether the substituted·contract be executory or executed, there must be an actual acceptance, and·not a mere agreement to accept.

12.  ACCORD AND SATISFACTION—*Acceptance—Effect of Satisfaction.*— An executory contract, oral or written, may be accepted in satisfaction of a pre-existing demand or controversy, and when so accepted the original demand or controversy is then wiped out; it is satisfied; and the right of action for it is gone, albeit it may be that out of the transaction designed as a satisfaction of the original wrong a new cause of action may arise.

Appeal from a decree of the Circuit Court of Henrico county. Decree for defendant. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Scott & Buchanan* and *Jno. L. Ingram,* for the appellants.

*Smith & Gordon,* for the appellee.

KELLY, P., delivered the opinion of the court.

This is an appeal from a decree dismissing a bill in equity brought to enjoin a trustee from selling certain real estate conveyed to him by deed of trust to secure a loan of money. The bill, after alleging that the complainants, George N. and Mary D. Rector, are the joint owners of one hundred acres of land in Henrico county, proceeds as follows:

"(2) That on the 19th day of May, 1911, they conveyed to R. A. Lancaster, Jr., the above described property in trust to secure to the holders of the notes the payment of the sum of $2,120.00, evidenced by three negotiable notes, date May 19, 1911, drawn by your complainants and payable at the National Bank of Virginia, Richmond, Virginia, to the order of your complainants and endorsed by them, as follows: One principal note for $2,000.00, payable one year after date, and two interest notes for $60.00 each, payable six and twelve months after date, respectively.

"(3) The said loan, secured as above described, was made by N. J. Hancock, who thereupon became the owner of said notes and is now the owner of said notes.

"(4) That at the time the said loan was made an agreement was entered into between said N. J. Hancock and your complainants to the effect that said Hancock would take possession and control of the said real estate during the term of the said loan and manage the same for his benefit, taking all the rents and profits arising therefrom for his own use, and that your complainants would remain on the

property in the employment of said Hancock during the term of the loan and serve him and perform services thereon without compensation, except their board and keep, and in consideration therefor the said Hancock then and there agreed that at the maturity of the said loan he would fully release the same unto your complainants and have the property conveyed in trust to secure the same fully discharged and released from the lien of the deed of trust herein described. Your complainants aver that the said Hancock took exclusive possession and control of said property under and pursuant to the foregoing agreement and not only took the rents and profits of the said property for the term immediately succeeding the said loan, but did not give up possession and control until the spring of 1915; that during all of said time your complainants fully and faithfully performed all of the terms of the foregoing agreement on their part to be performed and faithfully labored for and served the said Hancock in and about all matters connected with his operation of the said property under and pursuant to the aforesaid agreement.

"(5) That at the expiration of the said two (?) years immediately succeeding the date of said loan, your complainants repeatedly requested the said Hancock to comply with his agreement and fully discharge and acquit them from the foregoing deed of trust debt and release their real estate herein described from the lien of said deed of trust, but though often so requested the said Hancock had failed and refused to do so and your complainants aver that he on the —— day of May, 1917, ordered and requested R. A. Lancaster, Jr., trustee in the deed of trust herein described, to sell at public auction the property of your complainants for the satisfaction of the debt secured in said deed of trust, alleged by the said Hancock to be now due and unpaid to him, with the interest thereon."

The defendant, Hancock, construing the alleged collateral

14

agreement as a matter separate from and independent of the contract represented by the notes and deed of trust, interposed a plea of the statute of limitations, averring "that the supposed cause of action in the said bill mentioned did not accrue to the said plaintiffs within three years next before the issuing of process to begin this suit, nor within five years next before the issuing of process to begin this suit."

[1]   No evidence was taken in the case, and it was heard simply upon the bill and exhibits and plea of the statute of limitations.   The alleged contract for service, however, was and is conceded to have been by parol.   The court was therefore right in sustaining the plea and dismissing the bill, if the parol agreement was to be regarded as a. transaction separate and distinct from the notes and deed of trust.   Regarded thus, its breach by the defendant merely entitled the complainants to a right of action which they could assert either by independent proceeding or as a counter-claim or offset against the notes.   The oral contract was to be completed, according to the allegations of the bill, in May 1912; this suit was brought in June 1917; and the plea was, therefore, necessarily good.

[2]   But the complainants, while conceding that the alleged agreement for services was by parol, and that any counter-claim thereunder would be barred, claim the right to rely upon it as a *pure defense,* against which no limitation would run, taking the position that it had been fully performed by them and "in effect amounted to no more and no less than a payment of the notes secured by the deed of trust."

The infirmity in this position is that there had never been any acceptance of the possession of the land and the services of the complainants as a payment of the notes.   The situation is illustrated by the case of *Doody* v. *Pierce,* 9 Allen (Mass.) 142, in which it was contended that the note

involved was paid in labor at or before maturity. The court said: "But it does not appear that the note was thus paid. When it was given, Pierce and Marshall were partners, and it was made payable to their firm. They agreed with the plaintiff that he should work for them, and that they would apply his wages to the payment of the note. On the first of January, 1858, they dissolved their partnership, and the note and mortgage were assigned to Marshall. The plaintiff agreed with him to continue to work for him, and that his wages should be applied in the same way. It appears by the master's report that before the principal became due the plaintiff's wages amounted to more than enough to pay the note and interest. But no indorsement has been made on the note, and no actual application of any part of the wages has ever been made to the payment of the note. It thus appears that the agreement as to the application of the wages was a mere executory contract, and requires a further act to be done before it can operate as payment. The note and mortgage remain legally valid till such application is made. *Cary* v. *Bancroft,* 14 Pick. 315 (25 Am. Dec. 393). *Dehon* v. *Stetson,* 9 Met. 345." See also *Cary* v. *White,* 108 Mass. 228.

[3, 4] One of the essential attributes of a negotiable note is that it is payable in money. Code 1919, sec. 5746; Biglow on Bills and Notes, p. 27. The notes in this case are described as negotiable in the bill, and upon their face are plainly payable in money. Their terms leave nothing uncertain or equivocal as to the medium of payment, and they thus fall within the general rule that, "when parties have deliberately put their engagements into writing in such terms as import a legal obligation without any uncertainty as to the objects or extent of such engagement, it is conclusively presumed that the whole engagement of the party and the extent and manner of their undertaking was reduced to writing; and all (such) oral testimony * * as

would tend to substitute a new and different contract for the one which was really agreed upon, to the prejudice possibly of one of the parties, is rejected. In other words, as the rule is now more briefly expressed, 'parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.' " 1 Greenleaf on Ev., sec. 275. See also 4 Wig. Ev. 2430 (3), p. 3427; *Towner* v. *Lucas*, 13 Gratt. (54 Va.) 705, 710; *Martin* v. *Lewis*, 30 Gratt. (71 Va.) 672, 682, 32 Am. Rep. 682; *Slaughter* v. *Smither*, 97 Va. 202, 205-6, 33 S. E. 544; *Percy* v. *Bank*, 110 Va. 129, 132, 65 S. E. 475; *Lynch* v. *O'Brien*, 115 Va. 350, 352, 79 S. E. 389; Mr. Line's note to *Slaughter* v. *Smither*, 5 Va. Law Reg. 316; *Brown* v. *Spofford*, 95 U. S. 485, 24 L. Ed. 508.

In the case of *Brent* v. *Richards*, 2 Gratt. (43 Va.) 542, it was held that where a slave had been sold under a written bill of sale which appeared to be formal and complete, the vendor might prove a contemporaneous parol agreement on the part of the vendee giving the former the right to repurchase the slave on certain conditions. It may not be altogether easy to harmonize the decision in that case with some of the subsequent decisions in this State dealing with the parol evidence rule, but the case cited gives no trouble here, because the opinion was based upon the ground that the parol agreement "was neither inconsistent with nor contradictory of the bill of sale," and further, that the bill of sale represented exclusively a stipulation of the vendor, while the parol agreement related to a collateral and not inconsistent undertaking on the part of the vendee. In the present case the alleged parol agreement embodied an undertaking on the part of the makers of the notes, and one, too, which is in direct conflict with the manner of payment provided for therein. By the notes they agreed to pay in money; by the parol contract they were not to pay in money but in labor.

In *Meredith* v. *Salmon,* 21 Gratt. (62 Va.) 762, the bond involved was "to be paid in current funds," and the court held that the maker might prove by parol evidence that at the time of the execution of the bond he was given the right to pay in Confederate currency; and again in *Sterns* v. *Mason,* 24 Gratt. (65 Va.) 484, in the case of a bond payable "in current money of Virginia" extrinsic evidence was resorted to in order to determine the medium of payment which the parties had in mind. But in both of these cases the court held that the words to be construed were equivocal and such as that "men might honestly differ as to their construction." Consequently, the parol evidence did not tend to vary or contradict, but merely to explain and aid in the interpretation of the written instruments. As stated by Judge Staples in *Meredith* v. *Salmon,* citing *Thorington* v. *Smith,* 8 Wall. (U. S.) 1, 19 L. Ed. 361, such evidence "simply explains an ambiguity which under the general rules of evidence may be removed by parol. It enables the court simply to interpret the written terms according to the real intent and agreement of the parties, and to understand what was meant by the words they have employed."

[5, 6] Upon the precise quotation now before us—the admissibility of parol testimony to show that a note or other obligation in terms payable in money was in fact to be discharged in some other way—we have found no Virginia decision, but the authorities cited above and the reason of the matter would seem necessarily to lead to the conclusion that such evidence is inadmissible. There is some conflict of authority upon the question, but it is believed that the conflict is more apparent than real, and due, in some cases at least, to the failure to distinguish between a contemporaneous parol contract intrinsically connected with the written contract, and one which is extrinsic and independent of the writing. The former if challenged cannot be

availed of for any purpose, while the latter may be the basis of an independent action, or of an offset or counter-claim against a demand upon the written contract. This distinction is concretely illustrated by the case in hand, and it is frequently adverted to by courts and text-writers in discussing the parol evidence rule as applied to money obligations. In Vol. 4 of Wigmore on Evidence, section 2436, the author says: "For the same reason as in the foregoing class of cases (agreements not to sue, or not to enforce, etc.), an agreement concerning the *mode* or *medium of payment* of an obligation cannot be established, when the document in any respect deals with that subject; but documents bear such variances of detail in these matters that no fixed rule can be laid down. An agreement of renewal, though it might be construed as virtually affecting the length of term of an obligation, seems really to concern a new and different obligation. An agreement of *counter-claim* or *setoff*, provided it is not in form or essence a mere qualification of the mode of payment specified in the document, may properly be established, for it concerns a separate obligation."

Again, Mr. Wigmore, discussing the application of the parol evidence rule to negotiable instruments, says (sec. 2444): "An extrinsic agreement as to the *mode of payment*, or the *amount of payment*, must be, by the foregoing tests, ineffective, since the parties have expressly dealt with these matters in the instrument; and although an agreement to concede a *credit* or *counter-claim*, as offsetting the obligation of the instrument, would be a separate transaction and therefore valid, yet the distinction between the two may sometimes be hard to draw."

In *Clement* v. *Houck*, 113 Iowa 504, 85 N. W. 765, there was an action on a promissory note. The case brings out and illustrates clearly the distinction under discussion here. The defendant claimed that, by an oral agreement prior

to the execution of the note, he had purchased certain goods from the plaintiff with the stipulation that if he should be unable to sell them by a certain time he would be allowed to return them to the plaintiff at their original cost; that he sold part of the goods; that before the expiration of the time within which he was to be allowed to return them, he executed the note sued on, reserving his right to return such as he could not sell, and that he had been unable to sell a part of the goods which he had on hand when the note was executed and for which it was given, and stood ready to return them. His pleadings admitted the execution of the note, but offered the agreement (1) as a *defense* to the action, and (2) as an *offset* or *counter-claim.* The court said:

"I. On the trial the defendant offered to prove that the alleged oral agreement was entered into at the time he purchased the goods; that he exposed and offered the goods for sale at the proper season, and that said goods proved to be unsuited for the trade supplied by him. That after diligent effort to sell the same at a reasonable profit, he offered to return said goods to the plaintiff, and packed and set aside the same, and has since held them subject to the order of the plaintiff. The price of said goods, as charged to defendant, was $803.75. Defendant also offered to prove that at the time he gave the note in suit he expressly reserved his rights under said agreement. To these offers plaintiff objected as seeking to vary by parol the terms of the note, and the objection was sustained. Under a well established and undisputed rule of law this evidence was not admissible to vary or contradict the terms of the note, and therefore not admissible in support of the defense pleaded. The note is payable in money, not in goods; and to entertain this defense as such, and to admit the evidence in support thereof, would clearly vary the terms of the note by making it payable in goods, instead of money.

There was no error in excluding this evidence, so far as the alleged defense is concerned, nor in withdrawing the defense from the consideration of the jury.

"II. We now inquire whether the defendant was entitled to introduce the offered evidence in support of his first counter-claim. His counter-claim shows a cause of action against the plaintiff for a money recovery, which he is entitled to have setoff against the amount due the plaintiff, unless by giving the note in suit he has waived said right. * * * If it is true, as defendant offered to prove, that his rights under the agreement were expressly reserved at the time the note was given, then there was neither waiver nor settlement of those rights. It is insisted that this evidence is not admissible, because it varies the terms of the note. Defendant, in this counter-claim, does not question the plaintiff's right to a money judgment for a balance due on the note, but he is in the attitude of saying that, because of the matters alleged in the counter-claim * * * the plaintiff owes him a sum of money, which he asks to have setoff against that confessed to be due to the plaintiff. If these rights were not waived nor settled, then the defendant has a cause of action against the plaintiff, the enforcement of which as a setoff does not vary the terms of the note, though it may operate as any other rightful setoff would, as a partial or total payment of the amount due to the plaintiff. * * * We conclude * * * that the court erred in excluding this offered evidence in support of the first counter-claim, and in withdrawing that counter-claim from the consideration of the jury."

In *Stein* v. *Fogarty,* 4 Idaho 702, 43 Pac. 681, there was an action on a promissory note. The defendant admitted the execution of the note, but alleged that contemporaneously with its execution he and the plaintiff mutually agreed that the note should be paid by the defendant in work and labor as a plumber, at the usual rates, upon a house then

being constructed by the plaintiff. The court, holding the parol evidence inadmissible, said: "The question involved in this case is whether parol evidence of an oral agreement made contemporaneously with a promissory note which contains an absolute promise to pay a specific number of dollars, at a specified time, is admissible to prove that such note was to have been paid in work and labor. It is a well settled principle, based on public policy, that parol contemporaneous evidence is inadmissible to vary or contradict the terms of a valid written instrument. (1 Greenleaf on Evidence, sec. 275.)"

See also to the same effect, *Munford* v. *Tolman*, 157 Ill. 258, 41 N. E. 617; *Vradenburg* v. *Johnson*, 3 Neb. (Unof.) 326, 91 N. W. 496; *Linville* v. *Holden*, 2 McArthur (D. C.) 329; *Thornburgh* v. *Newcastle Railroad Co.*, 14 Ind. 499; *Lang* v. *Johnson*, 24 N. H. 302; *Roundtree* v. *Gilroy*, 57 Tex. 176; *Holt* v. *Chandler*, (Tex. Cr. App.), 29 S. W. 532.

[7, 8] There is a line of cases holding that an executed or fully performed contemporaneous verbal agreement for the discharge of a note, as distinguished from an executory contract for the same purpose, may be shown by parol and will constitute a good defense. (43 L. R. A. 483, note.) We are unable to give our assent to the doctrine of these cases except in so far as they may be construed to mean that such a contract, when fully performed by the maker of a money obligation and accepted as such by the payee amounts to an accord and satisfaction. Thus, for example, in *Buchanan* v. *Adams*, 49 N. J. Law, 636, 10 Atl. 662, 60 Am. Rep. 666, the evidence showed that lumber was in fact received as a payment instead of money. The collateral contract must have been executed in the sense that something else than money has been actually given and received in satisfaction of the debt. When this has been done, the debt has been discharged. It will be true in practically all cases that the collateral agreement is executory at the time it is made, and we are unable to see any valid ground

upon which to hold that a different rule of evidence should apply to such a contract after it has been performed, except as indicated above, in cases where the performance has been accepted in discharge of the obligation. Until there has been such acceptance and consequent discharge of the written obligation to pay money, it matters not whether the parol contract remains executory or has been fully executed so far as the rules of evidence are concerned, because in either case the purpose is to prove a contract different from that which is evidenced by the writing. Of course, an executed contract will generally be of much more value to the defendant as a counter-claim or offset against an action on the written obligation than a contract which still remains executory; but neither one can be engrafted by parol upon such obligation so as to vary its terms in regard to matters completely covered by it.

[9] In the instant case, if the bill had alleged that subsequent to the execution of the notes, the defendant *accepted* the possession of the property and the services of the complainants in satisfaction of the notes and afterwards refused to release the deed of trust, we would have no difficuty in holding that parol evidence should be admitted to prove such acceptance. This would simply be proving by parol an accord and satisfaction equivalent to payment, which is always permissible. And, as against a defense based upon the state of facts here supposed, the statute of limitations would not constitute a bar. Thus, in *Blackshear* v. *Dekle*, 120 Ga. 766, 48 S. E. 311, it was held that where, in a suit on a note, the defendant pleaded payment, alleging that the plaintiff had *accepted* lumber in satisfaction of the note, the defense was not barred by limitation, even though it would then have been too late to sue for the value of the lumber or to set up its delivery as a counter-claim. See also 17 Cyc. 1063; 17 R. C. L. 745.

[10, 11] But the allegations of the bill do not make a case of accord and satisfaction. This is true because, first,

the written and verbal contracts were *contemporaneous,* whereas an accord implies a pre-existing debt or dispute; and, second, there was no *in praesenti* acceptance of the verbal arrangement as a substitute for and discharge of the written contract, but only an agreement to accept *in future* a performance of the verbal arrangement. The bill affirmatively shows that there never has been any substitution of the one contract for the other, the allegation being that the defendant "is now the owner of the notes," and that, though repeatedly requested, he has failed and refused to comply with his agreement to accept the possession of the land and the services of complainants in discharge thereof. In order to constitute a valid accord and satisfaction, whether the substituted contract be executory or executed, "there must be an actual acceptance, and not a mere agreement to accept." 2 Min. Inst. (3d ed.), p. 169.

[12]     There has been no contention before us that the alleged verbal contract was intended as a substitute for the contract in writing, or that it amounted to an accord and satisfaction. We have mentioned the question because the conflict in the authorities as to the effect, in cases like this, of an executed verbal contract is, in our opinion, due to a failure to distinguish between facts which constitute an accord and satisfaction and facts which cannot be so construed. An executory contract, oral or written, may be accepted in satisfaction of a pre-existing demand or controversy, and when so accepted the original demand or controversy "is then wiped out; it is satisfied; and the right of action for it is gone, albeit it may be that out of the transaction designed as a satisfaction of the original wrong, a *new cause of action* may arise." 2 Min. Inst. (3d ed.) 166. See also 1 Cyc. 313, 314, note 46; 1 Am. & Eng. Ency. L. (2d ed.) 423; 1 R. C. L., p. 199, sec. 36.

For the reasons stated, we are of opinion that the court did not err in dismissing the complainants' bill, and the decree complained of is, therefore, affirmed.

*Affirmed.*