## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Lloyd Thomas Melton

v.

Richmond Greyhound Lines et al.

October 9, 1962

Cases No. A-3893 and A-4570

By JUDGE ALEX H. SANDS, JR.

Counsel for the various defendants having agreed to the accuracy of the plaintiff's statement of facts and summary of the pleadings and issues in these two cases as appear in plaintiff's brief pages 1 through 12, the Court adopts such statement and summary without here repeating or paraphrasing them.

It is further agreed among all counsel that of all matters raised by defensive pleadings, i.e., the defendants' motion (actually a plea of accord and satisfaction) and response thereto filed in case A-3893 and the motion to dismiss, demurrer, replication, plea in abatement, motion to quash, plea of accord satisfaction and estoppel, pleas of the statute of limitations and special plea filed by the various defendants in case A-4570 only the plea of accord and satisfaction and the plea of estoppel are submitted to the Court for decision without intervention of a jury at this time. So that the only material considerations before the Court at this time are (a) under the facts as conceded is the plea of accord and satisfaction sustainable and if not (b) is the defense of estoppel available to defendants.

*Accord and Satisfaction*

Before consideration of the legal aspects of this plea let us determine, from the conceded facts and necessary inferences to be drawn therefrom, the character of the undertaking with which we are concerned.

Layne, representing Melton, the Martin estate and the owner of the vehicle and having instituted suit upon the Melton claim, entered into negotiation with Miller, representing Greyhound, for a settlement of the claims (in the belief that a suit against the Martin estate would be worthless). These negotiations culminated in a letter from Layne to Goddin (who had associated Miller to handle the case for Greyhound and Cone) offering to settle the three cases for the respective sums of $1,000.00 for Melton, $600.00 for the Martin estate and $150.00 for the property damage claims. This is defendants' exhibit # 1. Goddin's reply (defendants' exhibit # 2) acknowledges that the cases "*can be*" settled for the amounts above indicated "respectively." This letter concludes with the statement that Miller has been instructed to "prepare the necessary papers *to consummate* settlement of your three claims on the basis upon which we are agreed." From these two exhibits it is perfectly apparent (1) that the agreement at this stage was executory in nature, (2) that despite the fact that a "package deal" was in contemplation that there were three separate, independent and distinct claims being handled, each at a fixed figure and (3) that the *consummation of the settlement*, which envisioned the execution of releases, giving and accepting of drafts and the securing of the Court's approval of the death settlement, was the true object of the settlement and not the consummation of an executory contract *to do* these things.

It is further rather apparent that although having completed the consummation of the death case and the property damage case by entry of Court order of approval, delivery of releases and delivery and unconditional acceptance of the drafts, that in the Melton case consummation was held up by Melton by his refusal to execute and deliver the releases and accept and negotiate the draft until further investigation of the possibility of coverage under his father's policy. On the contrary, these instruments were placed in escrow with Layne *not* to be by him delivered

or negotiated until further authorization from Melton. As to Melton, therefore, while there was a consummation of the executory contract *to* settle, there was no consummation of the settlement itself. The consummation of the executory agreement constituted an accord but until payment under the settlement was made and unqualifiedly accepted there was no satisfaction. *Campbell County* v. *Howard*, 133 Va. 19 (1922); 1 Mich. Jur. *Accord and Satisfaction*, page 60; 1 Am. Jur., page 251, et seq. It is true that if the consummation of the executory agreement had been *itself* the object of the accord then the consummation of such agreement (which was completed by exhibits 1 and 2) might have constituted acceptance in satisfaction of and in substitution of, the pre existing demand (here the tort claim) and in such case its execution alone would have been sufficient satisfaction to constitute an execution of the accord, *Rector* v. *Hancock*, 127 Va. 101 (1920), but for such situation to exist it must be clear from the evidence that the owner of the chose in action has agreed to accept the executory agreement itself and not the performance of it as a satisfaction for his claim. 1 Am. Jur. page 254; *Kromer* v. *Heim*, 75 N.Y. 574, 31 Am. Rep. 491. As above pointed out it is abundantly clear that this case (as indeed is true in most tort settlements) it was the *performance* of the executory contract to settle and not the *execution* of the contract which was looked to for satisfaction of the tort claim.

There having been no completion of performance of the executory contract of settlement (i.e. the unqualified acceptance of the draft and the execution and delivery of the release) there was an accord but no satisfaction and this plea must, therefore, be overruled.

*Estoppel*

The other defense relied upon in chief is that of estoppel. As interposed in this case this defense might, perhaps, be more accurately referred to as "quasi estoppel" or "waiver" (see 19 Am. Jur. page 636) but the term used is of no consequence for the defendants' position is clear. Defendants say that Melton having agreed to settle and the tender having been made by Greyhound in strict accordance with the terms of such agreement that the settlement

should be considered as consummated and Melton prohibited from further pursuing this action which is in the teeth of the settlement to which he has formally agreed. Unless Melton was justified in his refusal to discharge his undertakings under the executory contract, i.e., to execute and deliver the release, accept the draft and dismiss the pending suit "agreed," the defense of estoppel must prevail.

All parties admit the existence of the executory contract to settle. If it was entered into (1) under a *mutual* mistake of fact (2) in regards a matter relating to a material feature of the contract, then Melton's avoidance of the contract is justified. If these *two* elements exist it would not affect Melton's right of avoidance that he could have informed himself of the true facts. The Court is in agreement with defendants, on the other hand that if this mistake be unilateral in nature Melton can not bring himself under the saving rule entitling him to avoidance. *Is mistake mutual or unilateral?*

Let us suppose that Layne and Miller during settlement negotiations had specifically based their agreement upon the fact that the Martin car was uninsured and the Martin estate insolvent. Suppose Miller had said, "You say you can't get anything from the Martin estate and that the car was uninsured. I feel that Greyhound was free of fault but will give you $1,700.00 to avoid litigation which you had better take since you say you can get nothing from the Martin estate." Suppose Layne had replied, "Well since I can't get anything from Martin's estate and the car is uninsured I'll take it." Could there be any question, had that been the case, that the mistake was mutual or that it was in reference to a material feature of the settlement agreement? Obviously not.

Under the evidence in the instant case the subject of the potential co-defendant was never mentioned. Yet it would be absurd to suggest that both Miller and Layne were not negotiating upon the basis that Greyhound was the only solvent defendant. Both Miller and Goddin had alleged in their respective grounds of defense that the sole cause of the collision was Martin's negligence. Miller certainly knew that Martin's estate had not been sued. At the time of settlement, Miller considered his settlement as being upon practically a nuisance basis (Tr. 25) and

all parties (counsel) knew full well that this settlement would bar any claim against the Martin estate.

For the above reasons it is felt that all negotiating parties were dealing upon the assumption that the claim against the Martin estate was worthless, otherwise no attorney in Layne's position in his right mind would have settled the Melton case upon a nuisance basis. To say that this consideration did not materially affect the settlement is to shut one's eyes to reality. While not a stated basis of the settlement, it was the very reason for, and the only justification for, the settlement.

This logical reasoning of the English Court in *Krell v. Henry*, 2 K.B. 740, which is emphatically approved by the Virginia Court of Appeals in *Va. Iron, etc.* v. *Graham*, 124 Va. 692, at page 700 (1919), seems particularly pertinent here:

> But, on the other side, it is said that the condition or state of things need not be expressly specified, but that it is sufficient if that condition or state of things clearly appears by extrinsic evidence to have been assumed by the parties to be the foundation or basis of the contract . . . I do not think that the principle of the civil law, as introduced into the English law, is limited to cases in which the event causing the impossibility of performance is the destruction or non-existence of something which is the subject matter of the contract, or of some condition or state of things expressly specified as a condition of it. I think that you first have to ascertain, not necessarily from the terms of the contract, but, if required, from necessary inferences, drawn from surrounding circumstances recognized by both contracting parties, what is the substance of the contract, and then to ask the question whether that substantial contract needs for its foundation the assumption of the existence of a particular state of things.

The fact that the court was there dealing with impossi-

bility of performance does not affect the concept here under consideration.

It is, therefore, held that the fact that there was uninsured motorist insurance coverage on the Martin vehicle available to Melton was a fact unknown to either Greyhound or Melton, was a matter relating to a material feature of the settlement and constituted a mutual mistake justifying Melton in refusing to complete the executory contract of settlement. The Court feels that the doctrine of *Seaboard Ice Co.* v. *Lee*, 199 Va. 243 (1957), is controlling.

Nor does the fact that this was a so-called package deal alter the situation. Defendants could have held up all payments until all releases were executed had they so desired.

Defendants urge that the entire situation was brought about by Layne's failure to conduct a proper investigation of the facts at the outset.

Assuming that this be true it would not alter Melton's right to refuse to consummate the agreement if the mistake was, indeed, mutual as the Court holds it to have been. The negligent failure of a party to know or to discover the facts, as to which both parties are under a mistake does not preclude rescission of a contract. Restatement of the Law of Contracts, vol. 2, page 977.

For the above reasons the plea of accord and satisfaction and the plea of estoppel will be overruled.

There having been no argument upon the other defensive pleadings filed, ruling is reserved thereon.