96

## CIRCUIT COURT OF THE CITY OF RICHMOND

United Leasing Corp.

v.

Resource Bank

Case No. LM-1064-4

BY JUDGE RANDALL G. JOHNSON

December 4, 2001

The issue before the court is whether plaintiff, whose amended motion for judgment alleges that the parties entered into a release ostensibly discharging defendant from all liability for the conduct about which plaintiff now complains, may maintain this action without specifically seeking rescission of the release. The issue is raised by demurrer. The court agrees with defendant that since plaintiff has alleged the existence of a release in the amended motion for judgment, plaintiff must specifically seek its rescission in order to proceed on the amended motion for judgment. Accordingly, the demurrer will be sustained. Plaintiff, however, will be allowed to amend.

The eighteen-page amended motion for judgment, the allegations of which will be taken as true on demurrer, alleges that, in June 1999, plaintiff, United Leasing Corporation, agreed to borrow $1,000,000 from defendant, Resource

Bank, and an additional $200,000 from another bank. The money was to be used by plaintiff to assist AGM Development Corporation, which was a customer of both parties and which was experiencing financial difficulties. The terms of the borrowing and the parties' other obligations were set out in an "Intercreditor Agreement," which was entered into by plaintiff, defendant, and AGM Development. According to the amended motion for judgment, plaintiff would not have borrowed the money or entered into the Intercreditor Agreement had it not been for fraudulent representations made by employees and officers of defendant concerning the financial condition of, and defendant's relationship with, AGM. When it learned of the fraud, plaintiff stopped making its loan payments. Subsequently, in October 1999, plaintiff and defendant entered into a "Liquidation and Loan Modification Agreement" ("Liquidation Agreement"), which ostensibly resolved the parties' dispute concerning plaintiff's stoppage of payments on the notes held by defendant, and which is attached to the amended motion for judgment as Exhibit B. Paragraph 11 of the Liquidation Agreement provides, in part, as follows:

> [Plaintiff] acknowledges that (i) it has no claims against [defendant] . . . whether for actions taken or not taken, as of the date of this Agreement, (ii) it has no defenses to the payment of the . . . Notes, and (iii) [defendant has] at all times acted in good faith, ha[s] not defaulted under the Notes, the Intercreditor Agreement, or any related loan documents and ha[s] exercised no control over [plaintiff]. *Accordingly, [plaintiff] releases and forever discharges [defendant] . of and from any and all manner of actions, suits, damages, injuries, claims, and demands whatsoever in law or equity, known or unknown, now existing, whether sounding in contract, tort, negligence, strict liability, or otherwise, whether contingent or noncontingent. . . .*

Emphasis added.

It is plaintiff's contention that the Liquidation Agreement was also procured by defendant's fraud and should not bar plaintiff's recovering for the fraud committed by defendant in the first instance. Defendant counters by saying that, since any claim of plaintiff against defendant arising out of anything that happened before the date of the Liquidation Agreement was released by that agreement, plaintiff cannot maintain the present action unless, and until, the Liquidation Agreement is rescinded. The court agrees.

In 12 *Williston on Contracts*, § 1488, p. 332 (3rd ed. 1970), it is said:

Fraud may induce a person to assent to do something which he would not otherwise have done, or it may induce him to believe that the act which he does is something other than it actually is. In the first case, the act of the defrauded party is operative though voidable; in the second case, the act of the defrauded person is void, because he does not know he is doing, and does not intend to do, the act.

The above principle is recognized in Virginia. In addition, once the fraud is discovered, the defrauded party must make an election: accept the contract even though it was procured by fraud or seek its rescission:

A contract induced by fraud is not void, but voidable at the option of the party injured by the fraud. Upon the discovery of the fraud, he has, as a general rule, the choice of two remedies: he may elect to rescind the contract, if he can restore what he has received in the same state or condition in which he received it, and sue for and recover back the consideration he has paid or given, or, if he has not paid or given anything, repudiate the contract, and rely, when sued, upon the fraud as a complete defence; or he may elect to retain what he has received under the contract and bring an action to recover damages for the injury he has sustained from the deceit.

*Wilson v. Hundley*, 96 Va. 96, 100-01, 30 S.E. 492 (1898); *see also Virginia-Carolina Rubber Co. v. Flanagan*, 150 Va. 276, 280, 142 S.E. 376 (1928).

The reason for the above rule is obvious. If the defrauded party were not made to elect, he or she might reap the benefits of the contract and then seek to have it rescinded before performing his or her obligations under it. If a contract is to be rescinded, the parties should be put back where they were before the contract was entered into, with anything received by either party pursuant to the contract being returned and neither party having any further obligations it. If the contract is not to be rescinded, both parties should know that at the earliest possible time so that the contract can be performed. In either case, the defrauded party may recover damages suffered as a result of the fraud. Still, an election must be made with regard to the validity of the contract itself. This is particularly true in this case, where it was represented during oral argument on the demurrer that plaintiff has filed several lawsuits against third parties. In those suits, plaintiff seeks recoveries against third parties under the same Liquidation Agreement that plaintiff in this action claims was

procured by fraud. If the Liquidation Agreement *was* procured by fraud, and if plaintiff should not be bound by it with regard to this defendant, why should plaintiff be allowed to enforce it against other defendants in other cases? In other words, if it is plaintiff's position that other defendants in other cases must comply with the terms of the Liquidation Agreement, why should plaintiff not be made to comply with its terms in this case? The court does not answer either of these questions now. The court simply points out that allowing plaintiff to proceed in this action without a decision on its part whether to seek rescission of the Liquidation Agreement might lead to results that are impermissibly inconsistent, even in light of Va. Code § 8.01-281 and Supreme Court Rule 1:4(k), which allow a party to plead alternative facts and theories of recovery against alternative parties. The demurrer will be sustained.

In making this ruling, the court is aware of plaintiff's argument that there was no obligation on its part to mention the Liquidation Agreement in the amended motion for judgment and that it only did so in anticipation of an affirmative defense of release by defendant. Since the Liquidation Agreement *was* mentioned, however, and since it was attached to the second amended motion for judgment as an exhibit, the court cannot ignore it. Indeed, courts have held that by pleading facts that defeat a cause of action, even if plaintiff was not required to plead such facts, the action should be dismissed. *Trevino v. Union Pacific R. Co.*, 916 F.2d 1230, 1234 (7th Cir. 1990) ("[A] plaintiff can plead himself out of court by unnecessarily alleging facts which, all unwittingly on his part, demonstrate that he has no legal claim."); *American Nurses' Assoc. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986) ("[I]f the plaintiff, though not required to do so, pleads facts, and the facts show that he is entitled to no relief, the complaint should be dismissed. There would be no point in allowing such a lawsuit to go any further; its doom is foretold."); *Ward's Equipment v. New Holland North America*, 254 Va. 379, 382, 493 S.E.2d 516 (1997) ("[A] court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings."). Although the present plaintiff was not required to mention the Liquidation Agreement in its amended motion for judgment, it did mention it. It also attached a copy. The court has every right to consider it on demurrer.

Even though the court will sustain the demurrer, it will allow plaintiff to amend. Leave to amend is to be liberally granted, Supreme Court Rule 1:8, and while plaintiff has already amended its motion for judgment once, that amendment was on plaintiff's motion, not as a result of the court's sustaining a demurrer. The court also rejects defendant's argument that plaintiff has

already waited too long to ask for rescission, *see e.g., Link Assocs. v. Jefferson Standard Life Ins. Co.*, 223 Va. 479, 484-85, 291 S.E.2d 212 (1982) ("Prompt action is required by the deceived party upon his discovery of . . . fraud. A party intending to repudiate a contract on the ground of fraud must act within a reasonable time and with great punctuality upon learning of the wrong."), and defendant's argument that regardless of everything else, the allegations of the amended motion for judgment are not sufficient to make out a cause of action for fraud. With regard to whether plaintiff has waited too long to seek rescission of the contract, the court does not know whether it has or not. What is prompt or punctual or within a reasonable time varies from case to case. That decision cannot be made without looking at the facts. The court cannot look at the facts on demurrer. With regard to whether the allegations make out a cause of action for fraud with regard to the Liquidation Agreement, the court will not make a ruling until after plaintiff amends its pleading and a new demurrer, if any, is filed.

The court makes no ruling on whether plaintiff must seek rescission of the Liquidation Agreement in the second amended motion for judgment or whether, if rescission is not sought and no mention of the Liquidation Agreement is contained in the second amended motion for judgment, the court can still consider the Liquidation Agreement on demurrer if a demurrer to the second amended motion for judgment is filed. The court also makes no ruling on whether rescission can be sought on the law side of the court. All of those decisions must await the filing of whatever pleadings are filed as a result of this opinion.

February 22, 2002

This action is before the court on Resource Bank's demurrer, special plea of release, and motion for summary judgment. The original motion for judgment was filed on May 1, 2001. In it, United Leasing Corporation alleged that in June 1999, it agreed to borrow $1,000,000 from Resource Bank and $200,000 from another bank. The money was to be used by United Leasing to assist AGM Development Corporation, which was a customer of both parties. The terms of the borrowing and the parties' other obligations were set out in an "Intercreditor Agreement" between United Leasing, Resource, and AGM. It was United Leasing's claim that it would not have borrowed the money had it not been for certain fraudulent representations made by a senior vice president of Resource concerning the financial condition of, and Resource's relationship with, AGM. It was also United Leasing's claim that Resource

subsequently took actions which adversely affected United Leasing's rights under the Intercreditor Agreement and which caused United Leasing financial harm. The original motion for judgment further alleged that on October 5, 1999, after Resource had taken the actions complained of, United Leasing and Resource entered into a second agreement, called a "Liquidation and Loan Modification Agreement," which, among other things, purportedly released Resource from any claims United Leasing might have against it arising out of the parties' dealings. The motion for judgment contained seven counts. Count I sought a declaratory judgment that the Liquidation Agreement was void and unenforceable; Count II alleged unjust enrichment; Count III alleged fraud; Count IV was for "constructive fraud and/or negligent misrepresentation;" Count V was for breach of good faith under the Uniform Commercial Code; Count VI was for breach of contract; and Count VII alleged tortious damage to collateral.

On June 22, 2001, Resource filed a motion craving oyer (of the Intercreditor Agreement and Liquidation Agreement), a motion for a bill of particulars, a demurrer, a counterclaim, a motion to transfer the case to the equity docket, a motion to bifurcate the declaratory judgment count from the other counts, and a motion for a protective order limiting discovery. A hearing was set for August 22, 2001. On August 20, two days before the hearing, United Leasing filed a motion for leave to file an amended motion for judgment. At the hearing on August 22, before argument was heard on Resource's motions, United Leasing's motion to amend was granted. An amended motion for judgment was filed on August 24, 2001.

The amended motion for judgment contained all of the factual allegations that were contained in the original motion for judgment. The request for a declaratory judgment that the Liquidation Agreement is void, however, was not included. The other six counts of the original motion for judgment were included. The Intercreditor Agreement and the Liquidation Agreement were attached to the amended motion for judgment as Exhibits A and B, respectively.

On September 21, 2001, Resource filed a demurrer to the amended motion for judgment. While the demurrer had several grounds, its principal thrust concerned the Liquidation Agreement, which Resource claimed prevented the action from going forward. In essence, it was Resource's argument that the Liquidation Agreement released Resource from any claim United Leasing had against it prior to October 5, 1999, the date of the agreement, and that, by not specifically seeking rescission of the Agreement in a timely fashion, United Leasing could not maintain its action. By order entered December 4, 2001, the demurrer was sustained. In its opinion letter dated the same day, the court

quoted the following passage from *Wilson v. Hundley*, 96 Va. 96, 30 S.E. 492 (1898):

> A contract induced by fraud is not void, but voidable at the option of the party injured by the fraud. Upon the discovery of the fraud, he has, as a general rule, the choice of two remedies: he may elect to rescind the contract, if he can restore what he has received in the same state or condition· in which he received it, and sue for and recover back the consideration he has paid or given, or, if he has not paid or given anything, repudiate the contract, and rely, when sued, upon the fraud as a complete defence; or he may elect to retain what he has received under the contract and bring an action to recover damages for the injury he has sustained from the deceit.

96 Va. at 100-01.

After discussing the above language and observing that United Leasing had, according to Resource, filed several lawsuits against companies other than Resource in which it was seeking damages under the same Liquidation Agreement that it claimed in this case was procured by fraud, this court said:

> [A]llowing plaintiff to proceed in this action without a decision on its part whether to seek rescission of the Liquidation Agreement might lead to results that are impermissibly inconsistent, even in light of Va. Code § 8.01-281 and Supreme Court Rule 1:4(k), which allow a party to plead alternative facts and theories of recovery against alternative parties.

Opinion Letter, *supra*.

The court again allowed United Leasing to amend, and the second amended motion for judgment was filed on December 19, 2001. It is that motion for judgment which is now before the court. It makes all of the factual allegations as the first two motions for judgment except that no mention at all is made of the Liquidation Agreement. The same six counts as were set out in the first amended motion for judgment are set out in the second. Resource has again filed a demurrer and has also filed a plea of release and a motion for summary judgment. While the court's ruling on Resource's plea of release and motion for summary judgment will dispose of all of United Leasing's claims, the court will also address the demurrer so that the record will be complete.

*Demurrer*

Resource's demurrer will be sustained as to Counts I, III, and IV of the second amended motion for judgment. With regard to Count IV, counsel for United Leasing conceded at oral argument that there is no separate cause of action in Virginia for a breach of a duty of good faith under the Uniform Commercial Code. Such concession is appropriate in light of *Charles E. Brauer Co. v. NationsBank*, 251 Va. 28, 466 S.E.2d 382 (1996), in which the Supreme Court said:

> Code § 8.1-203 provides: "Every contract or duty within [the U.C.C.] imposes an obligation of good faith in its performance." Thus, while a duty of good faith and fair dealing exists under the U.C.C. as part of every commercial contract, we hold that the failure to act in good faith under § 8.1-203 does not amount to an independent tort. The breach of the implied duty under the U.C.C. gives rise only to a cause of action for breach of contract.

251 Va. at 33.

There also can be no claim for unjust enrichment, which is Count I, in this action. As this court said in *Webb v. Webb*, 37 Va. Cir. 274 (1995):

> Unjust enrichment is a judicially-created rationale for implying a contract where no express contract exists. *Dade v. Anderson*, 247 Va. 3, 7, 439 S.E.2d 353 (1994). It does not apply where an express contract does exist.

37 Va. Cir. 274.

Here, there can be no doubt that an express contract, the Intercreditor Agreement, exists. All three of the motions for judgment claim it exists. It was attached as an exhibit to the two amended motions for judgment. If the Intercreditor Agreement was procured by Resource's fraud, United Leasing is entitled to recover damages for fraud. If it was breached by Resource, United Leasing is entitled to recover damages for breach of contract. If it was neither procured by fraud nor breached, there was no unjust enrichment. Resource simply reaped the benefits of its bargain.

Count III is for "constructive fraud and/or negligent misrepresentation." The substantive allegation is contained in paragraph 38:

> Either through negligent misrepresentation or constructive fraud, Resource represented the facts set forth above and failed to disclose

facts, which would make their [*sic*] prior representations untrue on and after June 11, 1999.

Generally, in order to state a cause of action for fraud, there must be a misrepresentation of an existing or pre-existing fact. *See, e.g., Tate v. Colony House Builders, Inc.*, 257 Va. 78, 82, 508 S.E.2d 597 (1999); *Patrick v. Summers*, 235 Va. 452, 454, 369 S.E.2d 162 (1988); *Soble v. Herman*, 175 Va. 489, 500, 9 S.E.2d 459 (1940). While an exception might exist where a person has no present intention of doing something he or she promises to do in the future, *see, e.g., Blair Constr., Inc. v. Weatherford*, 253 Va. 343, 348, 485 S.E.2d 137 (1997); *Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343, 351, 297 S.E.2d 647 (1982), the court is aware of no case or principle of law that recognizes a cause of action for fraud because a present representation or failure to disclose makes a *prior* representation untrue. The present representation or failure to disclose might be evidence that the prior representation was untrue when made, and therefore fraudulent. The present representation or failure to disclose, however, is not fraudulent unless it is fraudulent in and of itself. That count will be dismissed.

The demurrer will be overruled as to Counts II, V, and VI of the second amended motion for judgment. Counts II and V properly state causes of action for fraud and breach of contract, respectively, which, if proven, would entitle United Leasing to relief. Although Resource points to facts which might make it difficult for United Leasing to prove fraud and breach of contract, they are just that: facts. They cannot be addressed on demurrer.

Count VI is for "tortious damage to collateral." While Resource appears to be correct that no Virginia court has ever recognized a cause of action in those words, what United Leasing really claims is negligence, and the demurrer is overruled on that basis. It makes no difference that there is a contract between these parties. A duty not to damage another's property exists whether a contract exists or not. If, as United Leasing alleges, Resource breached that duty, United Leasing is entitled to recover.

*Plea of Release and Motion for Summary Judgment*

Resource's special plea of release and motion for summary judgment are both based on the Liquidation Agreement entered into by the parties on October 5, 1999, and will be discussed together. As noted above, the Liquidation Agreement was specifically referred to in the original motion for judgment and the first amended motion for judgment, and a copy was made an exhibit to the first amended motion for judgment. United Leasing also admits

in its response to the plea that the agreement exists. It is Resource's position that the Liquidation Agreement precludes United Leasing's claims from going forward. The court agrees.

Paragraph 11 of the Liquidation Agreement provides, in part:

> [United Leasing] acknowledges that (i) it has no claims against [Resource] . . . whether for actions taken or not taken, as of the date of this Agreement, (ii) it has no defenses to the payment of the . . . Notes, and (iii) [Resource has] at all times acted in good faith, ha[s] not defaulted under the Notes, the Intercreditor Agreement, or any related loan documents and ha[s] exercised no control over [United Leasing]. *Accordingly, [United Leasing] releases and forever discharges [Resource] of and from any and all manner of actions, suits, damages, injuries, claims, and demands whatsoever in law or equity, known or unknown, now existing, whether sounding in contract, tort, negligence, strict liability, or otherwise, whether contingent or noncontingent. . . .*

Emphasis added.

In plain and simple terms, the above language releases Resource for anything it did prior to October 5, 1999. No other interpretation is possible. United Leasing argues, however, that the release is of no effect for three reasons. First, United Leasing argues that the Liquidation Agreement cannot be enforced against it because it has been materially breached by Resource. Second, United Leasing claims that the Liquidation Agreement cannot be enforced against it because Resource acted inequitably. Third, United Leasing claims that the Liquidation Agreement cannot be enforced against because it was procured by Resource's fraud. The court rejects all three arguments.

Taking the arguments in inverse order, the court's opinion letter of December 4, 2001, contains a discussion of the principles governing contracts procured by fraud. As pointed out in that letter, a party who has entered into a contract due to the other party's fraud has two options: "[h]e may elect to rescind the contract, if he can restore what he has received in the same state or condition in which he received it, and sue for and recover back the consideration he has paid or given, or, if he has not paid or given anything, repudiate the contract, and rely, when sued, upon the fraud as a complete defence; or he may elect to retain what he has received under the contract, and bring an action to recover damages for the injury he has sustained from the deceit." *Wilson v. Hundley, supra,* 96 Va. at 100-01. He cannot do both. In

addition, the election must be made promptly. In *Link Assoc. v. Jefferson Standard*, 223 Va. 479, 291 S.E.2d 212 (1982), the Court said:

> The law on the subject is settled. Prompt action is required by the deceived party upon his discovery of misrepresentations amounting to constructive fraud. A party intending to repudiate a contract on the ground of fraud must act within a reasonable time and with great punctuality upon learning of the wrong. He will be deemed to have waived his right of repudiation if, after discovery of the fraud, he treats the contract as a subsisting obligation.

223 Va. at 484-85. *See also Finch v. Garrett*, 109 Va. 114, 115, 63 S.E. 417, 418 (1909) ("[W]hen a party intends to repudiate a contract on the ground of fraud, he should do so as soon as he discovers the fraud.").

In *West End Co. v. Claiborne*, 97 Va. 734, 34 S.E. 900 (1900), it is said:

> A contract tainted with fraud is not void, but voidable. Therefore, great punctuality and promptness of action are required by the deceived party upon his discovery of the fraud. "The person who has been misled is required, as soon as he learns the truth, with all reasonable diligence to disaffirm the contract, or abandon the transaction, and give the other party an opportunity of rescinding it, and of restoring both of them to their original positions. He is not allowed to go on and derive all possible benefits from the transaction, and then claim to be relieved from his own obligations by a rescission, or a refusal to perform on his own part. If, after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of and relief from the misrepresentations."

97 Va. at 752 (*quoting* 2 *Pomeroy's Equity Jurisprudence*, § 897).

Here, not only did United Leasing fail to seek rescission of the Liquidation Agreement in the year and a half between the date of the agreement and the filing of this lawsuit, it has also failed to seek rescission of the agreement in the nine and a half months since claiming that the agreement was procured by fraud in the original motion for judgment. When the cases speak of "prompt" action, they undoubtedly mean more promptly than that.

Perhaps even more significant than United Leasing's failure to affirmatively seek rescission is its action in other cases. In at least four civil lawsuits filed by United Leasing against parties other than Resource, one of which was filed in this court, United Leasing has claimed, and is still claiming, that the Liquidation Agreement is valid. In fact, United Leasing concedes in its written response to the motion for summary judgment that *it "has received an arbitration award in Mississippi in one of the cases."* Emphasis added. The concession continues:

> As with the pending cases cited by Resource, in the Mississippi case, [United Leasing] brought suit against a third party *as an assignee of AGM under the Liquidation Agreement.* The agreement provided [United Leasing] the right to collect on AGM's accounts receivables, and the defendant was a party who failed to compensate AGM for work performed.

Memorandum in Opposition to Defendant's Motion for Summary Judgment, at 7 (emphasis added).

United Leasing has also admitted the existence of the other lawsuits in which the Liquidation Agreement is an issue. *See* Response to Special Plea of Release filed January 23, 2002. In each of those suits, United Leasing affirmatively and unequivocally asserts the validity of that agreement. Those actions by United Leasing make the questions posed in this court's earlier decision not so rhetorical:

> [I]t was represented during oral argument on the demurrer that [United Leasing] has filed several lawsuits against third parties. In those suits, [United Leasing] seeks recoveries against third parties under the same Liquidation Agreement that [United Leasing] in this action claims was procured by fraud. If the Liquidation Agreement *was* procured by fraud, and if [United Leasing] should not be bound by it with regard to this defendant, why should [United Leasing] be allowed to enforce it against other defendants in other cases? In other words, if it is [United Leasing's] position that other defendants in other cases must comply with the terms of the Liquidation Agreement, why should [United Leasing] not be made to comply with its terms in this case?

Opinion Letter dated December 4, 2001, *supra* (emphasis in original).

To the above questions, the following might be added: if United Leasing is successful in having the Liquidation Agreement rescinded in this case, will

it return the money received in the Mississippi arbitration? The court thinks not. As was said in *Link Assoc. v. Jefferson Standard, supra*:

"Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. *He is not permitted to play fast and loose.*"

223 Va. at 485 (*quoting Grymes v. Sanders*, 93 U.S. 55, 62 (1876), *quoted in United States v. Idlewild Pharmacy, Inc.*, 308 F. Supp. 19, 23 (E.D. Va. 1969) (emphasis added)).

What United Leasing is attempting to do here and in the other cases is precisely the kind of "fast and loose" conduct deplored by the cases. It will not be allowed.

In making this ruling, the court is aware, as United Leasing points out, that Va. Code § 8.01-281 and Supreme Court Rule 1:4(k) allow a party to plead alternative facts and theories of recovery against alternative parties. Nothing in the statute or rule, however, allows a party to take the vastly inconsistent positions which United Leasing has taken here. As was said in *Burch v. Grace Street Building Corp.*, 168 Va. 329, 340, 191 S.E. 672 (1937):

[A] party is forbidden to assume successive positions in the course of a suit, or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory. A litigant is estopped from taking a position which is inconsistent with one previously assumed, either in the course of litigation for the same cause of action, or in dealings *in pais*. This wise and salutary policy has been repeatedly followed. . . .

A party cannot either in the course of litigation or in dealings *in pais,* occupy inconsistent positions. Upon that rule election is founded; "a man shall not be allowed" in the language of the Scotch law "to approbate and reprobate" and where a man has an election between several inconsistent courses of action, he will be confined to that which he first adopts; the election, if made with knowledge of the facts, is in itself binding. . . .

168 Va. at 340 (citations omitted).

The above rule has not changed with the adoption of Va. Code § 8.01-281 and Rule 1:4(k):

> We are committed to the principle that "[w]e do not permit a litigant to assume inconsistent and mutually contradictory positions."

*Winslow v. Scaife*, 224 Va. 647, 653, 299 S.E.2d 354 (1983) (*quoting Strickland v. Dunn*, 219 Va. 76, 79, 244 S.E.2d 764, 766 (1978)). *See also McLaughlin v. Gholson*, 210 Va. 498, 501, 171 S.E.2d 816 (1970); *Rohanna v. Vazzana*, 196 Va. 549, 553-54, 84 S.E.2d 440 (1954).

United Leasing also argues that the Liquidation Agreement cannot be enforced against it because Resource acted inequitably in procuring it. Such argument is based on paragraph 16(c) of the Liquidation Agreement which provides:

> *Legally Enforceable Agreement.* This agreement is [each party's] legal, valid, and binding obligation, enforceable against it in accordance with its terms; *provided that such enforceability may be limited by . . . the application of principles of equity whether in an action in law or proceeding in equity.*

Emphasis added.

The only inequitable conduct cited by United Leasing is Resource's alleged fraud. Whether the above language would, under other circumstances, relieve United Leasing of its obligations under the Liquidation Agreement, something the court does not decide, it does not relieve United Leasing of its obligation to promptly declare fraud and seek rescission of the agreement as set out in the cases discussed above. Simply referring to Resource's conduct as "inequitable conduct" instead of fraud does not dismantle centuries-old law.

Lastly, United Leasing argues that the Liquidation Agreement cannot be enforced by Resource because Resource itself has breached it. The court rejects that argument for two reasons. First, the court has been cited to no Virginia case that holds that where a settlement agreement is breached by one of the parties, the parties are put back in the same position they were in before the settlement was reached, unless the settlement agreement specifically so provides. While United Leasing cites *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091 (4th Cir. 1982), as support for its position that "[i]f there be a material breach of executory accord . . . the breaching party may no longer assert the existence of the accord as a bar to the suit on the underlying action [and] [t]hus, the non-breaching party may bring suit either to enforce the accord or on the underlying action itself," 690 F.2d at 1095 (Widener, J., dissenting), that case involved an Equal Employment

Opportunity Commission Notice of Right to Sue. It did not involve Virginia contract law. The cases cited in support of the propositions just stated, *Brown v. Spofford*, 95 U.S. 474, 483-84 (1877), and *De Villiers v. Atlas Corp.*, 360 F.2d 292, 295 (10th Cir. 1966), are not Virginia cases. The court believes that the law of Virginia is as stated in *Rector v. Hancock*, 127 Va. 101, 102 S.E. 663 (1920):

> An executory contract, oral or written, may be accepted in satisfaction of a pre-existing demand or controversy, and when so accepted the original demand or controversy "is then wiped out; it is satisfied; and the right of action for it is gone, albeit it may be that out of the transaction designed as a satisfaction of the original wrong, a *new cause of action* may arise."

127 Va. at 115 (quoting 2 *Minor, Institutes* (3d ed.) 166 (emphasis in original)).

Thus, even if Resource *has* breached the Liquidation Agreement, such breach would not restore the parties to the position they were in before it was executed. At most, it would give United Leasing a right to sue for breach of the Liquidation Agreement. It would not give United Leasing a right to sue for a breach of, or fraud connected with, the Intercreditor Agreement.

Second, the only mention of Resource's alleged breach of the Liquidation Agreement is in United Leasing's Response to Special Plea of Release, and the only thing said is that "Resource committed a material breach of the Liquidation Agreement." Such a naked assertion is not enough. While a motion for judgment is sufficient if it "alleges all the circumstances necessary to support the action with sufficient fullness, clearness, and precision to apprise the defendant . . . of the grounds of the plaintiff's claim," *Mutual Life Ins. Co. v. Oliver*, 95 Va. 445, 446, 28 S.E. 594 (1897), United Leasing's allegation of a breach of the Liquidation Agreement does not do that. The only thing United Leasing says is that the agreement was breached. It does not say how it was breached or how United Leasing was damaged. In other words, it does not "apprise [Resource] of the grounds of the plaintiff's claim." And although United Leasing's allegation is not contained in a motion for judgment or counterclaim, the history of this action and the nature of Resource's plea make it incumbent upon United Leasing to do more than simply make the assertion. In light of United Leasing's having already amended its motion for judgment twice, it will not be permitted to amend its pleadings further.

Based on the above, the second amended motion for judgment will be dismissed without leave to amend. The case will remain on the docket pending resolution of Resource's counterclaim.